STATE OF MARYLAND, use of MARY BASHE, widow, and others *vs.* JAMES BOYCE.

*Negligence—Unsafe wharf—Liability of Owner.*

The owner of a wharf is not liable for injuries sustained by an employé of the lessee in consequence of the breaking of a rotten plank, unless it appear that such owner knew, or by reasonable care and diligence could have known, the unsafe condition of the wharf when he leased it.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*J. Alexander Preston,* for the appellant.

*W. Cabell Bruce,* for the appellee.

IRVING, J., delivered the opinion of the Court.

This action was brought in the name of the State for the use of the widow and children of Joseph Bashe, who was killed by the giving way of a plank on the wharf of the appellee, by reason of unsoundness and rottenness which was attributed to the negligence of the owner, James Boyce, the appellee.

At the time of the accident the wharf was in the occupancy of the Consolidated Coal Company of Baltimore City, and the deceased was in the employ of that company.

There is but one question involved in the appeal, and that is the correctness or not of the Court's ruling in instructing the jury that there was no legally sufficient evidence to entitle the plaintiff to recover.

The only evidence in the case was as follows: first, an admission signed by counsel in the following words: "It is admitted in this case, that, at the time of the accident mentioned in the *narr.*, the property known as 'Boyce's Wharf,' where the accident occurred, in regard to which this suit was brought, was owned by James Boyce, although Orville Horwitz, who died prior to the injury complained of, held a deed for the same to secure a loan, with defeasance, which was unrecorded; and also that the Consolidation Coal Company occupied said premises as tenant of James Boyce, who received the rent for the same until the Consolidation Coal Company had finished a wharf belonging to it in the course of erection."

Secondly. It was also proved that the deceased was in the employ of the Consolidation Coal Company, which was the lessee of the appellee; and that while engaged in hauling a car, a board, which constituted part of the covering of an opening used for dumping coal between the rails of the railroad track, broke through and the deceased fell through the opening and died of the injuries he received thereby. It was also proven that the board was part of the wharf over which the men had to pass in discharging their duties, and that the board was rotten and unsound.

When the plaintiff rested, the Court, in pursuance of its rules, called on the defendant to submit a prayer, and this was offered: "That there is no evidence in the case legally sufficient to show that the plank mentioned in the evidence was in an unsafe and dangerous condition at the time that the wharf or pier mentioned in the evidence was leased by the defendant to the Consolidation Coal Company, in whose employ the decedent was at the

time of the accident mentioned in the evidence, and that therefore their verdict must be for the defendant.'' This instruction was granted and the plaintiff appealed.

The cases of *Owings vs. Jones*, 9 *Md.*, 108, and *Albert vs. State, use of Ryan*, 66 *Md.*, 337, fully adopt the rule laid down in *Rich vs. Basterfield*, 56 *E. C. L. Rep.*, 784, that '' where the *owner* leases premises, which *are a nuisance*, or must in the nature of things become so by their user, and receives rent, then, whether in or out of possession, he is liable.''

It would not do, as this Court says, in *Albert's Case*, for the owner, knowing the condition of his wharf, or having, by the exercise of any reasonable care, the means of knowing it, to rent it out, and receive the rent, and escape liability when a crash comes. But then, according to the holding of the Court in *Albert's Case* and the cases referred to in *Albert's Case*, it is essential to recovery, that it appear that the defendant knew when he leased the wharf that it was in unsafe condition; or that by reasonable care and diligence he could have known of its unsafe condition.

We think the Court was entirely right in ruling that there was no evidence in this case from which the jury could reasonably infer that the wharf was in unsafe condition when it was leased, or that by reasonable care he ought to have known it. It does appear that a plank was rotten, and broke and caused the injury and death declared for; but it does not appear that the defendant had any reason to suspect its infirmity, or could be reasonably charged with negligence in failing to know of it. How long the defect had existed is not shown; nor how long it had most likely existed. How long the tenant had been occupying and renting the premises was not shown, nor any thing from which that fact could be reasonably approximated. The contention of appellant that the fact the appellee had only leased the wharf to the

coal company till a wharf in the course of erection for it was completed, justified a finding that the wharf was in unsafe condition when the coal company leased it, cannot be sustained. The jury could not guess how long the coal company had occupied it before their wharf was begun. There was no basis for a finding, such as plaintiff asked for. *Non constat* that the coal company had not occupied a sufficient length of time for the rot to commence and the decay to advance to ruin. Some wood rots very quickly. There was no evidence of what material the plank was. As we have already said, there was no evidence on which to base a finding as to how long the wharf had been growing unsafe, and that the defendant ought to have known it. The judgment must be affirmed.

*Judgment affirmed.*

(Decided 20th February, 1891.)