ROSE MYSZKIEWICZ ET AL. *v.* LORD BALTIMORE FILLING STATIONS, INC.

[No. 5, April Term, 1935.]

*Decided May 22, 1935.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Robert R. Carman* and *Nathan J. Felsenberg,* with whom were *Clagett Bowie* and *Keech, Carman, Tucker & Anderson* on the brief, for the appellants.

*Everett L. Buckmaster* and *Harry J. Green,* with whom were *Edwin H. Brownley* and *Weinberg & Sweeten* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The action on this record was brought for damages sustained by the plaintiff Rose Myszkiewicz in slipping and falling on a concrete paved way on the property of the defendant, where it operated a filling station which it had constructed in the angles formed by the intersection of the converging building lines of Boston and Fleet Streets with the transverse building line of Chester Street. The pavements of Boston and Chester Streets were twelve feet and ten inches wide and that of Fleet Street was eleven feet and eight inches. None of the structures of the defendant extended beyond the building lines of its property. The building of the defendant was on the south side of the lot and stood back a short distance from a slightly elevated concrete block whose

front curb extended from the building lines of Boston and Fleet Streets and formed the southern boundary of a concrete way, running east and west between these streets a few feet in front of this building, and, on either side of its doorway, were, at the edge of the curb, the pumps for gasoline and the containers for the oils and grease sold to the owners of the motor vehicles who used this way to get the tanks of their vehicles filled from these sources of supply. To the right or east of the doorway were five containers of oil or grease, and a gasoline pump, and to the left or west of the doorway were four containers for oil and grease and one tank for gasoline. Extending southward from the building line on Chester Street and parallel with Fleet Street the defendant had constructed a concrete block, twenty feet long, three feet wide, and one foot high, on which were erected three gasoline pumps and two electric light fixtures. In front of these last-mentioned fixtures the curb had been removed for practically the whole length of the pavement along Chester Street and the pavement for a width about three feet had been gradually sloped to the level of Chester Street. The access to the openings of the way between Boston and Fleet Streets was by similar slopes from the surface of the street. The entire space, including the sidewalks and the property of the defendant, was covered with an even surface of concrete, except where occupied by the filling station and fixtures, which have been previously described. The effect of these entrances from the three streets was to leave the width and level of the sidewalks unaffected, except that at every one of these three openings a strip three feet in width was converted into a gradual decline which sloped from the level of the pavement to the surface of the street.

Although there was sufficient width of street pavement along every one of the three streets named for the pedestrian, it had become a practice for travelers on foot, who desired to go from Fleet Street to Boston Street, not to go on the public ways or pavements along Fleet Street

to Chester Street, and thence to Boston Street, but to turn instead to the left at the northeast corner of the building of the defendant and walk westwardly to Boston Street upon the concrete way used by the customers of the defendant for the purpose of obtaining gasoline and oil and other supplies for automobiles and trucks. There is no evidence that the defendant objected to this practice or made any effort to stop it. The interference with the use of the sidewalk by the obstruction afforded by motor vehicles being driven in and out of the premises of the defendant was contributory to the practice, as was the incentive to shorten the walk. The latter motive originated with the traveler, but the first was an incident to the enjoyment of a municipal license to the defendant and, there being no evidence of an abuse of the privilege, the use did not constitute a nuisance, and the occupier of the property cannot be said to have incurred any legal liability by the transient obstruction of travel along the sidewalk by its customers.

By suffering the travelers on foot habitually to walk in a definite course over its property in going from one street to another, the traveler cannot be classed as a trespasser, since his habitual intrusion upon a definite way on the defendant's premises may be said to be by an implied permission, and, so, the user became a bare licensee upon that part of the premises to which such permission applied. Under these circumstances, the defendant, as the owner and occupier of the premises, was bound to anticipate the presence of the licensee upon those parts of the property to which the permission applied, and not to do any act which would covertly endanger the safety of the licensee if he went upon the property in pursuance of the permission given him. *Maenner v. Carroll*, 46 Md. 193, 222.

It was, therefore, as a bare licensee that the plaintiff, in broad and bright daylight, on a Sunday in March, while walking to church and, finding the sidewalks obstructed by automobiles, entered upon the way described, by turn-

ing left from Fleet Street, and went about two steps on the way when she fell at a spot about one foot away from the curb bounding the south side of the way along the front of the battery of oil and grease containers on the right or east side of the entrance to the building. The plaintiff was the only witness of the accident, and she testified that the place was "ordinarily" clean and clear, but, notwithstanding, she looked where she was going before she fell and "saw it was clear and clean" and walked ahead; and, after she fell, she noticed "some light oil there" and her hand was covered with a slippery or oily substance. After the plaintiff reached home, her daughter took off her clothing and noticed some oil on her shoes, stocking, and clothing which, according to her testimony, "looked like automobile oil."

The plaintiff went upon the land of the defendant with the consent of the defendant, but upon the plaintiff's own concerns, which involved no transaction or affairs with the defendant, the occupier of the premises. The permission of the defendant to the plaintiff to walk across the way of concrete may be implied from the testimony, but this did not confer upon the plaintiff the right to have the premises made safe for her. The use of the way was wholly for the benefit of the plaintiff and without any consideration moving to the defendant. So, the licensor here would not be liable for the insecurity of the way, unless the licensor knew of its dangerous condition and failed to remove it or omitted some duty to warn the licensee. Some wrongful act must be shown or some breach of a positive duty. The condition complained of is the presence of oil on the concrete walk, a short distance in front of one of the oil containers. The act by which the oil came there is not established, and conjecture will not supply the failure of proof. The oil may have been spilled by a third party while the container was filled by the party during a delivery of the commodity to the defendant, or it may have been dropped in the filling of a customer's tank by a servant of the

defendant, or it may have dropped from a leak in some part of a motor vehicle whose operator had used the way to pass through or to stop in his own interest or on business with the defendant. How the oil came to be on the way is wholly speculative, since to impute the cause to a third party is as consistent as it is to impute it to the defendant.

In the absence of any relevant testimony which connected the defendant with an act or neglect that caused the oil to appear on the way, the plaintiff cannot recover unless there is some breach of duty by the defendant in being aware of a dangerous condition of the way caused by the presence of the oil, and in failing to remove the danger or to warn the plaintiff, a bare licensee. In other words, in the absence of any act of commission having been shown, the question is, Was there sufficient evidence of a failure to repair carefully or to warn sufficiently? For a simple act of omission to be actionable, there must be a failure of some duty due by the licensor to the licensee. Before a duty to remove the oil or to warn the pedestrian of its presence could arise, it was necessary for the defendant either to know the condition or be charged with its knowledge because it should have been discovered by him before the accident. There is no evidence of actual knowledge, so the inquiry is, Was the defendant charged with knowledge by reason of the length of time the oil was permitted to remain after its deposit? The record does not disclose any basis in the testimony for a breach of duty in this respect. There is no testimony when the condition of which the plaintiff complains began, nor how long before the accident the condition continued, so, there can be no inference of unreasonable delay in removing the danger or in giving warning where the time element is thus unascertainable. *Weidman v. Consol. Gas, etc. Co.*, 158 Md. 39, 43, 45, 148 A. 270.

It does not appear on principle how what was not a latent or concealed danger but one where the licensee had

full opportunity for inspection and which was as open, apparent, and expectable to the licensee as to the licensor, should impose upon the licensor any particular pains either to make the use of the way safe to the licensee or to ascertain its true condition and guard the licensee against danger. Particularly is this true as the oil or grease spots on the way were not abnormal, but such as might be expected to exist in the legitimate use of the premises by the defendant. The tolerated intruder must take the premises as he has found them, and can only demand notice of any new and abnormal condition which increases the danger of the condition which the licensee has been permitted by the licensor to regard as naturally attaching to his habitual user. *State, use of Lorenz, v. Machen,* 164 Md. 579, 582, 165 A. 695; *Bohlen on Torts,* 161; *Am. L. Inst. Restatement, Torts,* vol. 2, sec. 340, subsec. (e), sec. 341, subsecs. (a), (d). The reason is that there is no bond of interest between the mere licensee and the occupier of the premises. The plaintiff was not bound to use the way, nor was the owner bound to make it any safer merely because he suffered the use by the licensee of a way which had no peril which was not expectable and obvious to the user.

Since there is no evidence on this record of positive misdoing on the part of the defendant with reference to the plaintiff, a bare licensee, she is not entitled to recover.

The case of the husband against the defendant for damages sustained by him that arose out of the injury to his wife was consolidated with her action and was submitted, with the case of the wife, on the same record. Since the action of the husband depends upon the right of the wife, his case must likewise fail. The court was, therefore, right in instructing the jury that neither the plaintiff nor the husband is entitled to recover.

*Judgment affirmed, with costs.*