AUSTIN *v.* BUETTNER ET AL.

[No. 211, October Term, 1955.]

64

*Decided August 21, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Francis B. Burch* and *John R. Royster,* with whom were *William J. McWilliams* and *Kieffner, Stinchcomb & Royster* on the brief, for the appellant.

*Paul T. Pitcher* and *W. Lee Harrison,* with whom was *Richard C. Murray* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

The appellant, Austin, then a solicitor of new accounts for The Equitable Trust Company, of Baltimore, visited a tavern at Riviera Beach, in Anne Arundel County, leased and operated by one of the appellees, Vance's Tavern, Inc., and owned by

the other appellees, the Buettners. The purpose of Austin's visit was to solicit business for his employer. He had had no previous contact with Vance's Tavern, and his call was made in the course of canvassing the Riviera Beach area for customers for a branch of the Trust Company. He arrived at about eleven o'clock in the morning on September 16, 1952. The weather was bright and sunny. He opened a screen door, took a step and fell down a flight of steps just inside the door, which led to the tavern or rathskeller in the basement of the building. He brought this suit, on his own behalf and to the use of his employer's compensation insurance carrier, to recover for injuries sustained in the fall against the appellees and against Edwin S. Vance, Olla Vance and William L. Gable individually and trading as Vance's Tavern, Inc. The trial court directed a verdict in favor of these individual defendants, who were the officers of the corporate defendant; and the appellant concedes the correctness of that action. Motions for directed verdicts offered by the other defendants, the present appellees, were overruled. The appeal is from judgments in favor of Vance's Tavern, Inc. (referred to below as "Vance's") and the Buettners, entered on their motions for judgment N. O. V., which were made and were granted by the trial court after the case had been submitted to the jury and the jury had failed to agree. (General Rules of Practice and Procedure, Part Three, III, Rule 8.)

The issues presented are: first, was Austin an invitee or licensee; second, were either (a) Vance's, (b) the Buettners, or (c) both, guilty of any negligence or breach of duty resulting in injury to Austin; and third, was Austin guilty of contributory negligence. In addition to the arguments presented in his brief, which dealt with those issues, the appellant added a contention at the argument that the construction of the stairway was such as to amount to a trap set by the owners of the property, the Buettners. This contention, we think, was not raised at the proper time and in the proper manner under Rule 39, Section 1 of our Rules and Regulations Respecting Appeals, and it will therefore not be further considered in this opinion. *Comptroller of the Treasury v. Aerial Products, Inc.,* 210 Md. 627, 124 A. 2d 805.

1. *Was the Plaintiff an Invitee or Licensee?* Benson v. *Baltimore Traction Co.,* 77 Md. 535, 26 A. 973, states the more or less traditional classification of those who go upon the premises of others by consent or invitation as (1) bare licensees or volunteers, (2) those who are expressly invited or induced by the active conduct of the defendant to go upon the premises, and (3) customers and others who go there on business with the occupier. Somewhat different terms are used in §§ 330-332 of the *Restatement, Torts,* which give these definitions:

§ 330. "A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission."

§ 331. "A gratuitous licensee is any licensee other than a business visitor as defined in § 332."

§ 332. "A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them."

*Comment c* under § 332 states that "It is not necessary that the visitor's purpose be to enter into immediate business dealings with the possessor. The benefit to the possessor may be indirect and in the future."

In *Peregoy v. Western Maryland R. Co.,* 202 Md. 203, 95 A. 2d 867, the plaintiff, a truck driver, was injured while working in a railway yard by being thrown from a truck when a freight car was shoved against the truck in the course of a switching operation. The plaintiff's employer had used a part of the railway yard for twenty-five years or so, rent free, for the storage of building materials shipped to it over this railway. The plaintiff was engaged in loading some of such material on his employer's truck when the accident happened. The trial court held that the plaintiff was a bare licensee, but this Court reversed that holding. Chief Judge Sobeloff's opinion defined an invitee or business visitor in much the same terms as are used in § 332 of the *Restatement, Torts,* saying (at 202 Md.

207, 95 A. 2d 869): "An invitee or business visitor is one invited or permitted to enter or remain upon land for a purpose connected with or related to the business of the occupant." The Railway Company contended that the work in which the plaintiff was engaged was of no benefit to it; but this Court held that view too narrow, and in speaking of the relationship between the plaintiff's employer and the Railway Company, said: "The mutuality of the benefits is palpable from the undisputed facts." Judge Sobeloff also quoted from III *Elliott on Railroads,* 828, the following: "To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant."

In *Gordon Sleeprite Corporation v. Waters,* 165 Md. 354, 168 A. 846, a bill collector had gone to the premises of the defendant to collect a bill due to his employer. Finding no one in the office, he crossed a yard and entered the defendant's factory, where he fell down an unprotected elevator shaft. This Court said that when he entered the office of the defendant, he was within his rights and was entitled to all the protections and safeguards of an invitee, but held that he lost that status when he entered a different part of the defendant's premises.

See also 65 *C. J. S.,* Negligence, Section 43(1), and 38 *Am. Jur.,* "Salesmen and Soliciting Agents," Section 121, page 783, each of which speaks of mutual advantage or interest as a requisite element in establishing that one who goes upon the premises of another is an invitee or business visitor.

The appellant entered Vance's business premises for a business purpose. There is no conflict about that fact, but the appellees contend that the business purpose was that of the appellant and his employer and not that of any of the appellees. The mutuality of interest of the Trust Company on the one hand and of the tavern operator on the other is not so "palpable" as was that of the building materials dealer and

the railroad in *Peregoy v. Western Maryland R. Co., supra;* yet we think that banking connections and services are of evident actual or potential business advantage or benefit to one engaged in the business of operating a tavern, just as they would be to one operating, say, a general merchandise store or a hardware store. Accordingly, we hold that the evidence would be sufficient to sustain a finding that Austin, the appellant, was a business visitor, and not a mere licensee of Vance's when he undertook to enter the premises leased by Vance's. His position as regards the owners of the premises, the Buettners, will be considered later.

2. *Negligence or Breach of Duty Resulting in Injury to Plaintiff.* This case is before us on appeal from judgments N. O. V. in favor of the defendant appellees. Accordingly, "we must assume the truth of all the evidence tending to sustain the suit[s] and of all inferences of fact fairly deducible therefrom, even though such evidence may be contradicted in every particular by opposing evidence." *Rea Construction Co. v. Robey,* 204 Md. 94, 97, 102 A. 2d 745, 746; *Baliles v. Bryant,* 207 Md. 332, 337-8, 114 A. 2d 601, 603, and cases therein cited.

At the time of the appellant's visit to the building in which Vance's was located, there was a restaurant on the first floor which was operated by persons having no connection with Vance's. Austin first attempted to enter the restaurant, but found the door locked. There was another door separated from that leading into the restaurant by a space of perhaps three or four feet, most of which was taken up by a long, narrow window. Both of these doors opened on a public highway. Austin had had no prior engagement or plan to visit Vance's or the restaurant or any other specific place of business. He was simply going from door to door of business establishments in the Riviera Beach area to solicit customers for his bank. The outer door leading to Vance's tavern was open and was fastened back across the narrow window. There was also a screen door at the entrance to Vance's, which was closed. Austin opened the screen door, stepped inside and fell down the stairs leading to the tavern.

These stairs came right up to the doorsill. The top of the sill was five inches above the outside sidewalk, and the tread of the topmost step was eight inches below the top of the sill. The sill itself was fourteen inches from the outside to the inside. The stairs were four and a half feet in width. Most of the risers were eight inches in height from one tread to the next, but one was seven and a half inches, another was seven and three quarters inches, and the bottom one was eight and a half inches in height. The average was eight inches. The treads were nine and a half inches deep, of which about an inch to an inch and a quarter projected over the top of the riser just below. There was a handrail on each side of the steps and there was a wall light inside the door at a height described by an architect as being at eye level as one entered the door. He expressed the opinion that, largely because of the position of this light, the lighting was inadequate.

The premises involved in this case are the same as those which were involved in *Burkert v. Smith*, 201 Md. 452, 94 A. 2d 460, but the stairs here involved were built after the accident which gave rise to that case. At the time when these stairs were built, the Anne Arundel County Building Code contained two provisions which appear to have been violated by the manner in which the stairs were constructed. The stairs were more precipitous than was permitted by the Building Code, and there was no landing inside the doorway. With regard to the latter point, Section 610, Paragraph 61, Clause (d) of that Code provided:

> "No exit door shall open immediately on a flight of stairs but a landing the length and width of which is not less than the width of such door, shall be provided between such door and such stairs. No riser shall be located within one foot of an exit door."

It is suggested that the second sentence of this Clause is in conflict with the first and that it renders the first clause nugatory. A more reasonable construction would be that the second sentence is mere surplusage. Of course, all parts of a statute or ordinance are to be given effect where possible; and we do not find it necessary to adopt either of the above

constructions in this case. As the appellant suggests, the second sentence can be given a meaning which would avoid conflict with the first. Such a meaning would prohibit a riser within one foot of the door if one stepped from a landing inside the door onto stairs running parallel with the outside wall and so approaching the door from either side, rather than from directly in front of it.

We accordingly hold that the construction of these stairs without a landing in front of the outside door constituted a violation of the above-quoted clause of the Anne Arundel County Building Code.

The appellees next urge that even if there was a violation of the Building Code, that alone is not enough to entitle the plaintiff to recover—it must be shown that the violation was the proximate cause of the plaintiff's injury. They then say that since no one knows—not even the appellant—how he fell, there is no way of establishing any causal connection between the violation of the Building Code and the injuries which he sustained.

It is the rule in this State that the mere violation of a statute or ordinance will not support an action for damages, even though it may be evidence of negligence, unless there is legally sufficient evidence to show that the violation was the proximate cause of the injury. See *Gosnell v. B. & O. R. R. Co.*, 189 Md. 677, 57 A. 2d 322; *Maggitti v. Cloverland Farms Dairy, Inc.*, 201 Md. 528, 95 A. 2d 81; *State, Use of Parr v. Board of County Com'rs of Prince George's County*, 207 Md. 91, 113 A. 2d 397, and cases therein cited.

Even if there had been no Building Code provision in this case, we think that the evidence was sufficient for a jury to find that there was negligence in having a flight of steps leading downward from inside a door opening onto a public highway. A person coming from the sunlight of outdoors, as the appellant did, into an inadequately lighted interior, without warning that immediately inside the door there were steps going down to the basement, would be very likely to fall. There was testimony of the architect as to the inadequacy of the lighting, and there was a conflict between the testimony of the plaintiff and that of the defendants with regard to

whether or not there were warning signs. The plaintiff testified that he saw none; two of the defendants testified that there were signs reading "Step Down". Even if the signs were there, there is a serious doubt as to whether they gave an adequate warning of the danger ahead. "Step Down" would seem more likely to suggest that there was one step down to a somewhat lower level of the floor inside than the level of the pavement outside, rather than immediate entry upon a stairway leading to a lower floor.

In *Skidd v. Quattrochi*, 304 Mass. 438, 23 N. E. 2d 1009, the plaintiff went to the defendant's premises to examine an automobile which had been demonstrated to him. After looking at the car, he went into the defendant's building to go into the office. He opened a door, stepped inside and fell down a flight of steps just inside. To get in he had to step up on a sill about six inches high and six or seven inches in width. There was no landing on the inside. A judgment for the plaintiff was affirmed. The Supreme Judicial Court of Massachusetts said: "The plaintiff was entitled to rely to a reasonable extent upon appearances, even though he misjudged the actual situation. * * * There was sufficient evidence to warrant the finding of the judge that the defendant's negligence was the cause of the plaintiff's injuries * * *. The stairway was steep and made dangerous by the absence of any landing at its top."

The presence of steep steps and the absence of a landing at the top were the two facts which the Massachusetts Court pointed out as evidence of negligence. These same facts are present in the instant case, and both the steepness of the stairs and the absence of the landing were in contravention of the Building Code. We think it plain that these facts would be sufficient in and of themselves to support a finding of negligence. The fact that they also constituted violations of an applicable ordinance does not deprive them of probative value in establishing negligence. See *State, Use of Parr v. Board of County Com'rs of Prince George's County, supra,* in which the breach of a statutory duty to protect the latch of an emergency door in a school bus against accidental or unwarranted release was held a sufficient basis for imposing liability upon

the Board of Education, where the bus struck a hole in the road and the door flew open and a child was thrown out.

In *Burkert v. Smith,* above referred to, which arose in these same premises, the danger inherent in the steps there involved was much less than the danger inherent in the steps involved in the present case. In that case, a woman waiting for her husband to finish drinking a beer on the premises stood just inside the door, with her back to the steps which then led to the basement. As someone else was about to enter the premises and opened the door, she stepped backwards to get out of the way and fell down the steps. A judgment for the defendant entered on a directed verdict was reversed, and both the negligence of the defendants (two of whom were the Buettners) and the contributory negligence of the plaintiff were held to be questions for the jury. The basis for a possible jury finding of negligence in that case consisted of having an unguarded stairway so close to the entrance. Judge Henderson dissented on both primary and contributory negligence. His views on the question of primary negligence point up several factors not present in that case which are present in this. He said (201 Md. 461-2, 94 A. 2d 464) : "There are few buildings anywhere that do not contain stairways, and it is not suggested that the existence of a stairway is negligence *per se*. But it is now held that the mere location of a stairway adjacent to a door is sufficient to charge a landlord with negligence. There must be thousands of buildings, erected in full compliance with the building codes, where such a condition exists. Apartments with doors opening on stair landings are a familiar example. There is no evidence that the stairway in question was improperly constructed, defective or badly lighted. To correct the defect found it will apparently be necessary to remodel the whole structure and move the staircase to an undetermined distance from any door."

Here we have a stairway immediately adjacent to a door, with no landing at all, constructed in contravention of the Building Code and said to be badly lighted. The problem of moving "the staircase to an undetermined distance from any door" was solved by bringing it right up to a doorsill, which hardly seems likely to reduce the risk of injury.

In *Recreation Centre Corporation v. Zimmerman,* 172 Md. 309, 191 A. 233, the proprietor of a bowling alley was held liable to a non-paying spectator, who was considered as only a gratuitous licensee, for injuries sustained by falling down steps leading from seats for spectators. The fall was due to one step being twice as deep as the others. The decision of this Court was not unanimous, but a majority concluded that a visitor, though exercising care, could have been misled by the condition and that the proprietor might be found lacking in ordinary care in not foreseeing the danger and acting accordingly. Chief Judge Bond, in writing the opinion, pointed out that "The tendency to assume that a stairway descends regularly from the top to the bottom is a natural one, of which any occupier of premises might be required to take notice." The tendency not to expect stairs to plunge down from immediately inside a public door also seems a natural one, which could also have been foreseen by the defendants.

We have not, up to this point, made any differentiation in responsibility as between the lessee, Vance's, and the owners of the building, the Buettners. Vance's was in possession, and we think that even though the lessee may not be chargeable with violation of the Building Code, yet there was sufficient evidence of negligence on its part towards Austin, a business visitor, to warrant the submission of the case to the jury, and that it makes no difference so far as the possible liability of Vance's is concerned whether Austin is regarded as a "patron" under the *Restatement's* definition (*Torts,* § 332, Comment *a*) or as some other kind of business visitor. *Restatement, Torts,* § 343.

Insofar as possible liability on the part of the Buettners on grounds of unsafe construction of the stairway and violation of the Building Code is concerned, we think that the evidence was sufficient to warrant the submission of these questions to the jury. There remain for consideration other defenses based upon rules of the law of landlord and tenant relating to a lessor's liability or non-liability for the defective condition of leased premises. Specifically, questions are presented with regard to public use of the premises and the extent thereof, and with regard to whether the appellant was within the class

of visitors to whom the lessors might be liable for the alleged unsafe construction of the stairway and violation of the ordinance.

. The exact status of the visitor who was injured was not discussed in *Burkert v. Smith, supra.* Both such a question and the extent of the liability of the lessor, as distinguished from that of the lessee, were carefully considered in *Sherwood Brothers, Inc. v. Eckard,* 204 Md. 485, 105 A. 2d 207. In that case the plaintiff visited a filling station owned by an oil company and operated by a lessee for the purpose of delivering chains which he had previously sold to the lessee. The plaintiff felt badly, and at the invitation of the operator, sat down in a chair outside the greasing room. With the consent of the operator he later moved inside, and sat down in the greasing room. While he was there, a car which the operator was greasing rolled off the greasing lift and injured the plaintiff. He sought to hold the owner liable because of the lack of an automatic locking device on the tracks of the lift, but this Court held that the true cause of the plaintiff's injury was the lessee's failure to take proper precautions, as by the use of wooden chocks, to keep the car from rolling off the lift. It was also held that if the lessor were under any liability to persons visiting the filling station because of its "public" character (which was not passed upon), such liability would not extend to a part of the station, the greasing room, into which the public were not intended to be admitted. The lessor was held entitled to a directed verdict, and the judgment below for the plaintiff was therefore reversed. (The jury found a verdict in favor of the lessee, who had also been made a defendant, and there was no appeal from the judgment on that verdict.)

Judge Hammond, in writing the opinion of the Court in the *Sherwood Brothers Case,* made a thorough review of the subject. In it, he stated the general rule that the landlord is liable for injuries to persons on the leased premises, such as guests or customers of the lessee, only to the same extent as he is liable to the tenant himself. He also stated the recognized exception to this rule where the leased premises are to be used for public or *quasi*-public purposes, so that large num-

bers of patrons may be expected to visit the premises, and said: "In such case, the landlord has been held to an obligation to use ordinary diligence to see that the property leased is in a reasonably safe condition at the time of the lease." He cited *Tiffany, Real Property,* 3rd Edition, Vol. 1, Section 107, and the *Restatement, Torts,* § 359. This Section, the opinion continues, "states that where a lessor leases his land for a purpose which involves admission of a large number of persons as patrons of his lessee, he is subject to liability for bodily harm caused to them by an artificial condition existing when the lessee took possession, if the lessor knew or should have known of the condition and realized, or should have realized, the unreasonable risk to them involved therein and had reason to expect that the lessee would admit his patrons before the land was put in reasonably safe condition for their reception. The comment points out that liability is limited to patrons who are admitted for the particular purpose for which the land was leased and excludes business invitees on the land for their own purposes. Examples of such leases given are for an exhibition rink, a baseball park, a steamship wharf and a bathing beach." (204 Md. 490, 105 A. 2d 209).

The opinion also cited earlier Maryland cases in accord with § 359 of the *Restatement, Torts: Albert v. State, Use of Ryan,* 66 Md. 325, 7 A. 697, involving a defective wharf furnishing the only means of ingress and egress to a summer resort; *Owings v. Jones,* 9 Md. 108, involving a vault under a public way into which a passerby fell as a result of a defective cover. This vault was constructed in violation of a city ordinance. *Swords v. Edgar,* 59 N. Y. 28, which involved a defective wharf, was also cited. This case was placed upon the ground that the wharf was substantially an extension of a highway and that in its defective condition it constituted a nuisance, for which the owner was liable. It may be added that in *State, Use of Bashe v. Boyce,* 73 Md. 469, 21 A. 322, the rule of the *Albert Case* was restated, but was found inapplicable because knowledge, at the time of entering into the lease, of the existence of a defective plank in a wharf was not brought home to the owner.

Judge Hammond went on to point out that the early cases

which led to the establishment of the exception to the general rule of non-liability of the lessor either involved, or were closely analogous to, nuisances on streets or public ways, that the exception has been applied most often to places of amusement and hotels, that there has been much division of opinion as to its further extension, and that this Court refused to extend it to a rooming house in *Smith v. State, Use of Walsh,* 92 Md. 518, 48 A. 92.

Although the liability, if any, of the owner is closely analogous to that of an owner in the case of a nuisance, and this fact has led to a good deal of language indicating or suggesting that the existence of a nuisance is the foundation of the lessor's liability, cases such as *Albert v. State, supra,* do not, as Judge Hammond points out in the *Sherwood Brothers Case,* involve true nuisances, but rest, rather, upon negligence. See also *Bohlen, Fifty Years of Torts,* 50 *Harvard Law Rev.* 725, at 741-745, and a note on the *Lessor's Duty to Repair,* 62 *Harvard Law Rev.* 669, at 671-2; *Webel v. Yale University,* 125 Conn. 515, 7 A. 2d 215, which squarely rejects the nuisance theory and adopts negligence as the basis of liability (and also contains a comprehensive review of many cases dealing with the lessor's liability); and *Oxford v. Leathe,* 165 Mass. 254, 43 N. E. 92. In this last case Justice Holmes, then a member of the Massachusetts Court, did not call a defective stairway a nuisance, but in resting the owner's liability on the ground of negligence referred to a number of cases on nuisances.

The test of liability in the *Sherwood Brothers Case* was whether or not the lessor's equipment there involved was or was not unsafe and dangerous in its condition at the time of the lease, regardless of the degree of care exercised in its use. (204 Md. 493, 105 A. 2d 211). Applying a like test to the stairway in the instant case, we think that here, unlike the *Sherwood Brothers Case,* the evidence was sufficient to sustain a finding that it was unsafe and dangerous or potentially dangerous at the time when the property was leased, and hence that a verdict in favor of the owners should not have been directed on this issue.

A question which did not require an answer and was there-

fore left unanswered in the *Sherwood Brothers Case* is directly presented here. Was the property leased for such a public use as would bring the case within the scope of § 359 of the *Restatement, Torts?* It will be recalled that that Section speaks of "a purpose which involves the admission of a large number of persons as patrons of * * * [the] lessee." Professor *Prosser* in his work on *Torts,* 2nd Ed., Sec. 80, p. 470, criticizes this stated requirement for the application of the rule. He says (citing cases in support of each example) : "It appears quite impossible to find any justification for it, if the landlord's responsibility is a public one; and it is now rejected by the overwhelming majority of the courts. The liability has been found in the case of small stores and shops, a restaurant, a beer parlor, a garage, a gasoline filling station, a parking lot, a voting precinct, small meetings, a doctor's office, a boarding house, and even premises across which there is a passageway used by the public. On the other hand it is not found in the case of private dwellings, a warehouse leased for private storage, or a private pier." Without expressing agreement or disagreement with each of the numerous cases cited by Professor Prosser as involving a public use where the lessor may be held liable, and though recognizing that our own case of *Albert v. State* involved a large number of persons and that the opinion so stated, we do not believe that any of our prior cases have committed us to the requirement of a large number, and we agree with Professor Prosser's view that this requirement imposes an undue limitation upon the operation of the rule stated in § 359. We think that a tavern is a public place, and that whether the number of its patrons is, or may be expected to be, large or relatively small does not affect the operation of the rule. The practical difficulty of drawing a line between "large" and "not large" numbers of persons is too apparent to require comment (see *Webel v. Yale University, supra);* and the object of the exception to the general rule of non-liability of the lessor is, we think, to protect the public, regardless of the size of the particular segment of the public which may actually happen to be affected.

We now come to the last condition here at issue upon which

the liability of the lessor is predicated. This is, as expressed in § 359 of the *Restatement of Torts,* that the liability runs only in favor of "patrons" of the lessee. Comment *a* states that "The word 'patron' denotes a licensee invited or permitted to enter the land for the purpose for which the land is leased" and refers to § 332, Comment *a.*

The Comment referred to draws this distinction between two classes of business visitors: "The first class includes persons who are invited or permitted to come upon the land for a purpose directly or indirectly connected with the business which the possessor conducts thereon, as where a person enters a shop to make a purchase or to look at the goods displayed therein or where he enters a factory as an employee or to deliver raw materials. The second class includes those who come upon the land for a purpose which is connected with their own business which itself is directly or indirectly connected with any purpose, business or otherwise, for which the possessor uses the land." This Comment later points out that under certain other Sections of the *Restatement of Torts,* including § 359, there are occasional instances where the possessor of land may be under a different duty to business visitors of one or the other of these classes, and states that "when this distinction is important, a business visitor of the first class is hereafter described as a patron."

Comment *b* under § 359 is headed *"Ambit of Liability"* and reads in part as follows:

> "The liability stated in this Section is based upon the fact that the lessor knows that the land is leased for the purpose of being thrown open to a considerable number of persons for entry for a particular purpose while in the same dangerous state in which it is when he gives possession to his lessee. Therefore, he is subject to liability only to those patrons whom the lessee admits to the land for that purpose. He is not subject to liability to those licensees whose character as business visitors is derived from the fact that they come upon the premises primarily upon their own business concerns, such as persons

coming upon the premises to deliver provisions or the like."

Professor Prosser (*op. cit.*, p. 470) states that "The lessor's liability extends only to those parts of the premises which are in fact thrown open to the public, and to those invitees who enter for the purpose for which the place was leased." See also 38 *Am. Jur., Negligence,* § 99, pp. 759-761. Clearly a customer entering a tavern to buy a glass of beer would be within the group to whom the lessor may be liable. There would seem to be little doubt that a salesman for a brewery from which the tavern keeper habitually purchased beer who came in to obtain a usual order would also be within the group. A salesman for a competing brewery which had never before done business with this tavern keeper would perhaps be a little more remote, but would still seem to be within the group. Many other cases might be supposed shading off as to products or services, such, for example, as a would-be seller of paper napkins for use in the tavern, or a salesman of mops or cleaning compounds, or one seeking employment as a night watchman, or an insurance agent seeking to sell a fire or burglary insurance policy.

The *Restatement's* definition of a "patron" is not limited to a customer, and the problem in this case would seem to be the scope of the term, "the purpose for which the land is leased." The reasoning based upon analogy to nuisance cases which has been influential in this State (and, we think, also in others) in determining the liability of the lessor to business visitors of the lessee, would sustain a broad, rather than a narrow, meaning of the term. Indeed, it suggests that in such cases the distinction between a patron and other business visitors may be over refined. Also, if one approaches the question from the negligence law point of view of the foreseeability of injury to others, it is quite foreseeable that the persons who will visit the lessee for business purposes will not be limited to his customers. Visitors for other business purposes will doubtless be less numerous than customers, but it is hardly to be supposed that a retail business establishment of any sort could be conducted without business dealings with persons other than customers.

The line of demarcation between patrons and other business visitors of the lessee may not always be easy to draw because of the difficulty of determining whether mutuality of interest does or does not exist. This problem seems inescapable in applying the rules stated by the authorities above cited. Perhaps as brief and satisfactory a key as any to this question may be found in Comment *a* under § 343 of the *Restatement, Torts,* where the difference between the duty of one in possession of land to a gratuitous licensee and to a business visitor is explained. There it is said that "the visit of a business visitor is or may be financially beneficial to the possessor." Although in many situations (such as those referred to in Comment *h* under § 332 of the *Restatement, Torts*) this is not the only measure of the lessor's responsibility, it seems a practical test for determining the mutuality of interest of the lessee and of a visitor in such a case as this. Thus, if the actual or potential financial benefit to the occupant is directly connected with the business conducted on the leased premises, we think that it would be sufficient to sustain a finding that the visitor was a "patron" within the meaning of § 359 above cited, and we need not pass upon the validity of the distinction between a patron and other business visitors. We think it could be inferred from the evidence in this case that the plaintiff's visit to Vance's could have been financially beneficial to the latter and that it was therefore sufficient to warrant the submission of the case to the jury on this question. Cf. *Gordon Sleeprite Corporation v. Waters, supra,* involving a bill collector making a "professional" call. See also *Hartman v. Miller,* 143 Pa. Super. 143, 17 A. 2d 652, in which a salesman sitting in the waiting room of a prospective customer was held to be a business visitor or invitee. (The defendant was held not liable because of lack of proof of negligence.)

Although the question was not raised in *Burkert v. Smith, supra,* as to the status of the plaintiff, who plainly had no intention of becoming a customer of the tavern operated by the lessee, the Court spoke of her as an "invitee" and cited and relied upon cases involving customers of stores. A judgment on a directed verdict in favor of the lessors, as well as a like judgment in favor of the lessee, was reversed, and an infer-

ence might be drawn from this that the plaintiff was considered as a patron of the lessee. That, however, would seem to be pressing the inference rather far, and the Court made no such express holding.

On the other hand, two Maryland cases in which persons have been held to be licensees and not invitees or business visitors and the landowner or occupant has been held not liable for injuries to them arose on very different facts from those here presented and emphasized the element that the visitors were on the land of another for their own purposes or convenience. See *Benson v. Baltimore Traction Co.,* 77 Md. 535, 26 A. 973, and *Myszkiewicz v. Lord Baltimore Filling Stations,* 168 Md. 642, 178 A. 856. In the latter case, the plaintiff was injured in crossing the premises of the defendant "with the consent of the defendant, but upon the plaintiff's own concerns, which involved no transaction or affairs with the defendant * * *." See also *Brosnan v. Koufman,* 294 Mass. 495, 2 N. E. 2d 441, where the plaintiff entered the lobby of a building open to the public to mail a letter.

Before leaving this phase of the case it may be well to add two things. The first is that the invitation to come upon the premises need not be express, but may be implied. *Restatement, Torts,* § 332, Comment *b; Robey v. Keller,* C. C. A., 4th, 114 F. 2d 790; *Atlantic Greyhound Corporation v. Newton,* C. C. A., 4th, 131 F. 2d 845. The second is that there is no evidence which would lead one to suppose that the lessor had any reason to believe that the lessee would make any structural change in the steps to make them reasonably safe for the reception of his patrons. See the *Restatement, Torts,* § 359, par. (b).

3. *Contributory Negligence.* On this point the case is a close one. There is not much to be added to what has already been said in connection with the question of primary negligence on the part of the defendants.

There is confusion and possibly controversy over whether the screen door opened outward or inward at the time of Austin's accident. We shall not prolong this opinion further by reviewing in detail the testimony on that point. Suffice

it to say that two of the defendants testified that it opened outward, that the plaintiff himself said substantially the same thing when his deposition was taken, but later claimed that he had learned that it had opened inward. This appears to have been based upon his architect's observation of the location of screw holes long after the accident and after the time when one of the defendants testified that the hanging of the door had been changed. Yet the arrangement to which the defendants testified seems extraordinary, since it would seem impossible to open the outside door from the inside if the screen door was between and opened only outwards. Vance said that this was the reason for the change. However, an actual conflict of testimony on this point seems lacking, and we therefore do not rest our decision on the ground of there being a conflict on this point which must be resolved in favor of the appellant in passing on the appellees' motion for judgment N. O. V.

On the other hand, we think that what was said in *Skidd v. Quattrochi,* above cited and quoted, is as pertinent on the plaintiff's contributory negligence as on the defendants' primary negligence. The plaintiff was entitled to rely to a reasonable extent upon appearances. One entering from the bright sunlight might well find difficulty in seeing into the somewhat tunnel-like aperture just inside the door. The ceiling above the stairs went down at about the same angle as the stairs (as well as we can tell from a photograph), and there was a wall on each side of the steps. According to the defendants there was a sign reading "Open" at or above the door, and both that sign and the badly placed light bulb inside operated on the same switch. There was a dispute as to whether or not there was any warning sign; and if there was, there is doubt of its sufficiency, as we have already said. See *Morgenstern v. Sheer,* 145 Md. 208, 125 A. 790, where the existence and visibility of warning signs were in dispute.

We do not find here any such decisive act of negligence on the plaintiff's part as would require the direction of a verdict against him on this issue. *Elzey v. Boston Metals Co.,* 189 Md. 566, 56 A. 2d 692; *Hempel v. Hall,* 136 Md. 174, 110 A. 210. A stairway leading down to the basement directly from

an outside door is not the kind of thing one would ordinarily expect to find on going through an entrance from a sidewalk to a restaurant or tavern. Whether the plaintiff was or was not guilty of contributory negligence is a question of fact which, we think, should have been submitted to the jury for determination.

*Conclusion.* In accordance with the views above expressed, the judgments will be reversed and the case remanded for a new trial.

> *Judgments reversed, with costs, and*
> *case remanded for a new trial.*