## LUDLOFF, TRADING AS IRVIN LUDLOFF & COMPANY *v.* HANSON

[No. 252, September Term, 1958.]

*Decided June 9, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*R. Roger Drechsler,* for appellant.

*Ronald H. Goodman,* with whom were *Alvin E. Friedman* and *Friedman & Goodman* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This is an action for personal injuries. Frank Hanson (Hanson or customer) sued Irvin Ludloff trading as Irvin Ludloff & Company (Ludloff or storekeeper) in the Superior Court of Baltimore City for damages he sustained when he fell from the second floor down the rear stairway of a furniture store. A jury awarded damages to Hanson for his injuries, and when the trial court denied a motion for judgment n.o.v., Ludloff appealed.

The parties, who owned businesses a few doors from each other on West Pratt Street, had been acquainted for years. Hanson had been in Ludloff's store a number of times, but he did not know of the existence of the rear stairway which had been built several years before when the first and second floors of the four-story building had been extended.

Hanson had gone to the furniture store to purchase a small table lamp. Ludloff met him as he entered and when his customer could not find what he wanted on the first floor both ascended to the second floor by means of the front stairway. When the second floor was reached they were in the center of the store. A narrow aisleway—created by leaving an open space between the displays of furniture and other merchandise on both sides of the store—extended toward the south or rear of the second floor.

Facing the rear, the rear stairway, which began at the right, was protected by a low partition about three feet high, except for a four-foot opening at the head of the stairway. This opening was flush with the west wall so that a person desiring to use the stairway from the second floor had to step down one step to a small landing, turn left and descend to the first floor. The floor was covered with a blotched beige-colored linoleum. The landing and the steps were covered with the same material except for a one-inch band of stainless steel on the edge of each step. The rear wall above the stairway contained a

four-by-four-foot window covered by a green curtain to protect the furniture from the rays of the sun.

The storekeeper and his customer proceeded down the center aisle toward the rear viewing the displayed lamps until the aisle ended at the stairway partition, in front of which two tables were on display. At this point Hanson turned to his right, moved past Ludloff, and walked several feet to a small lamp on a table or a chest of drawers. This piece of furniture was described by the storekeeper as being forty-eight inches high and twenty inches deep. It was against the west wall and partially in front of the opening to the rear stairway so that the four-foot opening was reduced to about twenty-eight inches. The partition was of the same color as the walls and the customer did not notice the open area above the stairway or the opening leading to it which was to his left. There was furniture on all sides of the aisle leading to the stairway entrance from the center aisle, but there were no signs, warning of the existence of the stairway, nor a guard rail across the entrance.

The customer looked at the lamp for a few seconds, and in turning to go or in reaching for the lamp—it is not clear which he did—he fell on to the landing. At any rate he was suddenly precipitated down the stairway to the bottom thereof and was injured.

At the time of the accident the store was well lighted at the center, but there was less light at the rear. Such as there was came from the center of the building, from the several lamps on display, including the one the customer had been inspecting, and that which came through the green-curtained rear window. A fluorescent light over the head of the stairway was unlighted, although there was a light at the bottom of the stairway on the first floor.

At the close of the evidence offered by the customer, and again at the close of all the evidence, the storekeeper moved for a directed verdict in his favor which was refused both times. We think that whether there was primary negligence on the part of one and contributory negligence on the part of the other under the facts and circumstances in this case were

clearly questions for the jury to decide under proper instructions on the law.

In the course of its lengthy and somewhat repetitious instruction, the trial court informed the jury, with respect to the alleged unsafe and dangerous condition, substantially as follows:

> "[I]f you should find * * * that the * * * [store-keeper] maintained a stairway obscured and surrounded with displays of merchandise * * * [which created an unsafe and dangerous condition] * * * and * * * left said stairway unguarded and unprotected and failed [to warn by word of mouth or] to have any sign or warning posted to * * * notify * * * [a prospective customer] of the existence of said stairway; * * * that the * * * [customer] had no knowledge of the existence of said stairway until he fell down the same; and [that] * * * while the * * * [customer] was examining the merchandise * * *, and [while] his attention was * * * [thereby] diverted, * * * [although] exercising ordinary care for his own safety, * * * [the customer] fell down said stairway, then you may [also] find that the * * * [storekeeper] failed to use due care * * * [under the circumstances]."

The storekeeper seasonably objected to this portion of the instruction on the grounds that there was no legally sufficient evidence of a dangerous condition, or of an obstruction, or of a covering-up of the stairway, and that there was no duty on the storekeeper to maintain a "guard rail or protection" for the stairway in question. We think the instruction as given—for the reasons hereinafter stated — was basically proper, and that the objections are without merit, nevertheless, such objections effectively raised a question which is the only point at issue in this controversy—whether or not the evidence was such as justified the court's instruction on the law. We think it was.

The general rule is that a storekeeper who invites the public into his place of business, either to inspect his goods, wares

and merchandise, or to trade with him, is bound to exercise ordinary care to keep his premises in a reasonably safe condition and to give appropriate warning of any latent or concealed dangers. Furthermore, one who enters a store or other public place is entitled to expect that the keeper thereof has made greater preparation to secure his safety than is required of a householder who is expecting a social or business visitor. For this reason, if a storekeeper negligently allows a dangerous condition to exist on his premises, and leads a customer into a trap or exposes him to an unreasonable risk, without giving adequate warning of the existence of such undisclosed dangers, which are known to the storekeeper, but not to the customer, then the storekeeper is liable in damages. The basis of liability is the storekeeper's superior knowledge of the dangerous condition. The dangerous condition, however, must not be known to the customer nor be so obvious that he should have known of it. *Burkert v. Smith,* 201 Md. 452, 94 A. 2d 460 (1953); *Yaniger v. Calvert Bldg. & Con. Co.,* 183 Md. 285, 37 A. 2d 263 (1944).

Obviously, we must go further than this general rule to find a solution to the problem presented by the facts in this case. The reports are filled with cases where disappointed invitees fell down lighted stairways in stores and were not allowed to recover because the stairway was not located in a dangerous spot or because the invitee was contributorily negligent.[1] Thus, when no other factors are present the rule is as was so aptly stated in *Hunnewell v. Haskell,* 174 Mass. 557, 55 N. E. 320 (1899):

> "There is no duty on the part of a shopkeeper to give warning of the presence of an ordinary flight of stairs in broad daylight, or to guard the necessary access to it, even if there is a crowd in his shop. * * * Every one who is on an upper story knows that there probably are stairs from it somewhere, and must look out for them."

1. See, for instance, the cases collected in 33 A.L.R. 181, 43 A.L.R. 866, 46 A.L.R. 1111, 58 A.L.R. 136, 100 A.L.R. 710 and 162 A.L.R. 949.

Recognizing that principle, this Court, in *Long v. Joestlein,* 193 Md. 211, 66 A. 2d 407 (1949), refused recovery to a domestic servant who fell down a well lighted stairway in her employer's home, holding that she was contributorily negligent as a matter of law and that the employer was not negligent. See also *Yaniger v. Calvert Bldg. & Con. Co., supra,* where it was held that the owner of an office building was not negligent when an invitee, who became dizzy, fell out of an open and unguarded window, since there were no facts showing a latent or hidden danger or risk of which the owner had knowledge superior to that of the invitee, nor any facts showing a condition or risk from which the owner would have reason to believe that an invitee would not see or discover.

Several Maryland cases have held, however, that there was sufficient evidence of negligence, due to the peculiar location of a stairway, to submit such cases to the jury. In *Burkert v. Smith, supra,* a patron of a tavern, who was watching a game of shuffleboard from a spot just inside the front door, fell down a flight of steps which were immediately to the left of the front door, when she stepped back to allow another patron to come through the doorway. Again, in *Austin v. Buettner,* 211 Md. 61, 124 A. 2d 793 (1956),—which, incidentally, involved the same tavern as that in the *Burkert* case—we held there was evidence of negligence when the tavern keeper permitted a stairway to exist just inside the outside door. In the *Austin* case the invitee was injured when he entered the dimly lighted tavern from the outside on a sunny day and fell down the flight of steps which came up to the doorsill of the tavern.

In the present case the customer contends, and we agree, that this case goes beyond the *Burkert* case, *supra,* and into the line of those cases referred to in the dissenting opinion in that case. The cases therein referred to, which Judge Henderson had in mind, are those which are based not on the mere existence or location of a stairway, but on the "active conduct by the proprietor or lessee, calculated to trap a customer, as, for example, the display of goods in such a manner as to hide the steps or divert the customer's attention * * *."

In *Raylass Chain Stores v. De Jarnette,* 163 Va. 938, 178 S. E. 34 (1935), the facts were substantially the same as they

are in the instant case. A customer fell down an open front stairway in the proprietor's store. The stairway was hidden from the view of those approaching from the front of the store by displays of merchandise. The color of the main floor and the landing were the same. Other features were also similar to those in this case. The Court held that it was proper to submit to the jury a question as to whether the placing of merchandise upon racks, which partially hid the steps, constituted negligence.

An earlier case which has been cited often in other jurisdictions is *Lehman v. Amsterdam Coffee Co.,* 146 Wis. 213, 131 N. W. 362 (1911). There, while looking at lamp chimneys displayed on shelves in the owner's store, the invitee fell down an open stairway. The store was lighted, but the stairway was obscured by piles of merchandise. On p. 364 the Court stated:

"We should be slow to say that an ordinary open stairway or hatchway in the storage part of a store could be called a trap or snare, even to an invitee. It is common knowledge that such places are very usual, and doubtless every person of full age should anticipate their existence, but the circumstances here are very much out of the ordinary. The stairway was surrounded on two sides with piles of merchandise as high or higher than the rail, and on one side by shelving. The evidence seems to be ample to show that in approaching it from the front of the store there would be no sign or indication of a stairway, and that only as one came practically to the opening itself from the east was it possible to see it, or anything suggesting the existence of an opening in the floor. The jury might, we think, well say from the evidence that it was a trap or snare of whose existence under the circumstances the rules of ordinary care would require that an invited person be warned."

See also *Cochran v. Pinto,* 333 Mich. 91, 52 N. W. 2d 611 (1952) ; *Rogers v. J. C. Penney Co.,* 127 Neb. 885, 257 N. W. 252 (1934) ; *Emmons v. E. P. Charlton & Co.,* 63 Wash. 276,

115 P. 163 (1911). Cf. *Morgenstern v. Sheer,* 145 Md. 208, 125 A. 790 (1924).

Since we find no error in the court's instruction on the law, we will affirm the judgment.

> *Judgment affirmed, the appellant to pay the costs.*