## ELKTON AUTO SALES CORPORATION v. STATE OF MARYLAND, to Use of FERRY et al.

### No. 3172.

Circuit Court of Appeals, Fourth Circuit.
Oct. 12, 1931.

Ogle Marbury, of Baltimore, Md. (Webster C. Tall, of Baltimore, Md., on the brief), for appellant.

Wm. Pepper Constable and John D. Alexander, both of Baltimore, Md. (Wm. L. Rawls, of Baltimore, Md., and Wm. T. Fryer, of Washington, D. C., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

On July 16, 1930, one George Bradford Ferry, while on the premises of the appellant in Elkton, Md., received accidental and fatal burns in consequence of a gasoline fire. His death having occurred a few days thereafter, his widow and minor children, then citizens of the state of Delaware, brought suit as equitable plaintiffs (now appellees) against the appellant, a Maryland corporation, to recover damages for his alleged negligent death.

The suit was brought under the Maryland act (Bagby's Annotated Code, article 67, commonly referred to as Lord Campbell's Act), which authorizes a suit in the name of the state of Maryland for the use of certain classes of surviving dependents (including the equitable plaintiffs in this case) in the event the death of the decedent was caused by the negligence of the defendant. In due course the case was tried to a jury and resulted in a judgment for $11,000 in favor of the equitable plaintiffs and apportioned among them as required by the act. The defendant has appealed.

The defendant was engaged in Elkton, Md., in the business of selling new and used automobiles and supplies pertaining thereto, and in the repair and servicing of motorcars. The premises occupied and used by it consisted of a show or display room facing on North street, together with a repair shop situated in the rear thereof and about 100 feet distant therefrom, the intervening space consisting of an open yard in which used cars for sale and customers' cars awaiting repairs were temporarily stored. The fire occurred in the repair shop and originated from the ignition of gasoline vapor flowing from an open bucket of gasoline. Ferry was a cabinet maker and upholsterer by trade whose residence and place of business was just across North street from the defendant's premises. While not an employee of the defendant, he had on one or more occasions shortly before the day of the fire done repair work for it on automobiles. At the immediate outbreak of the fire he had been in the repair shop for a few minutes in conversation with defendant's mechanic who was then working on the cleaning of spark plugs for an automobile.

At the trial the plaintiffs submitted testimony with regard to the nature and character of the defendant's business, with particular reference to the repair shop, and also apparently all available testimony as to the origin of the fire. At the conclusion of the plaintiff's testimony the defendant declined to submit any testimony whatever but requested the court to direct a verdict for the defendant on the grounds that (1) the plaintiff's testimony was insufficient to show defendant's alleged negligence; or (2) if the defendant was negligent, plaintiff was not entitled to recover because (a) Ferry was guilty of contributory negligence or (b) if not, nevertheless the evidence showed that the status of Ferry on the premises was that of a licensee only and not an invitee; and therefore the plaintiffs were not entitled to recover, there being no evidence to show that Ferry's injuries were caused willfully and intentionally by the defendant. The District Judge declined to direct a verdict for the defendant and charged the jury in substance that if they found that the defendant had been guilty of negligence and Ferry had not been guilty of contributory negligence, and if they further found that the defendant's repair shop and character of business conducted therein was such that the public had been invited by the defendant to freely enter it, then they should find a verdict for the plaintiffs; but conversely, if the jury did not find negligence or did find contributory negligence on the part of Ferry, or if the jury found the character of the repair shop was such that the defendant had not given an invitation to the public to enter it, and that Ferry on the particular occasion was present on the premises for some private and personal reason only, then the jury should find a verdict for the defendant.

The assignments of error are based on the defendant's exceptions to the refusal of the court to direct a verdict for the defendant and to that portion of the judge's charge which defines the circumstances under which the jury might find the status of Ferry on the defendant's premises as that of an invitee as contrasted with a licensee. During the argument appellant's counsel conceded that the defendant's contributory negligence was properly treated as a jury question and, as we think the evidence compels this view of that defense, it will not be necessary to further consider it as a ground for a directed verdict. The questions remaining for consideration are thus narrowed to the following points: (1) Was there legally sufficient evidence of the defendant's negligence as the proximate cause of Ferry's injuries; (2) was the evidence sufficient to justify the jury in finding that Ferry had the status of an invitee on the defendant's premises at the time of his injuries; and (3) did the trial judge with substantial correctness instruct the jury as to what facts in this case would justify the finding that Ferry was an invitee? In the charge the jury were left at liberty to find that Ferry's status was that of a licensee and not that of an invitee and if they so found they were charged to render a verdict for the defendant.

There was no controversy between the parties at the trial, and is none now, as to the measure of duty owing by a property owner to an invitee and a licensee respectively. The general rule of law is that to an

invitee a property owner owes the duty of ordinary care and is legally responsible for his negligence in that regard, while the property owner is not legally liable to a licensee unless he is guilty of some intentional, wanton or wilful injury. Bennett v. Railroad Co., 102 U. S. 577, 26 L. Ed. 235; Benson v. Baltimore Traction Co., 77 Md. 535, 26 A. 973, 20 L. R. A. 714, 39 Am. St. Rep. 436; Thompson's Commentaries on Law of Negligence, vol. 1, §§ 948, 968.

With regard to the issue of negligence, it is our opinion after careful consideration of the evidence as disclosed by the record, that this question was properly submitted for the jury's determination. It is unnecessary to state in detail all the evidence bearing upon the origin of the fire. The dominant fact is that while Ferry was in the defendant's repair shop conversing with defendant's mechanic regarding the automobile in defendant's charge on which Ferry desired to obtain a job for repair work in his line, the gasoline vapor flowing from an open bucket of gasoline became ignited and in consequence thereof Ferry received fatal burns. This open bucket of gasoline containing a little less than a gallon in quantity was in use by defendant's mechanic for cleansing automobile parts and washing his hands, pursuant to similar and customary practice in defendant's repair shop. It is now general, if not common, knowledge and was also affirmatively shown by the testimony of an expert in this case, that it is a careless and dangerous practice to allow gasoline to be exposed to the air. Volatility of the liquid causes its rapid vaporization and the resultant mixture of air and vapor in certain proportions is highly inflammable and will cause fire, and, if closely confined, an explosion, wherever there is present an igniting factor. In many, if not most, instances of gasoline fires or explosions it is very difficult to ascertain what was the actual factor of ignition. The striking of a match or other open flame or a very small electric spark generated by friction or created by the dropping of some metallic instrument on a stone or cement floor may cause ignition if it comes in contact with the mixed vapor and air. In this case, as in most others, there is no direct evidence as to what was the igniting factor. There was no artificial fire in the repair shop. Its equipment consisted of work benches and some electrical devices which were not shown to have been in use at the time. The only persons in the shop were the mechanic and Ferry. Both were looking out the window at an automobile in the adjacent yard awaiting repairs. The defendant had not posted any "No Smoking" signs in the shop. The mechanic was not smoking nor was there any evidence that Ferry was smoking, although the mechanic testified that immediately prior to the fire Ferry had taken a pipe out of his pocket, rapped it on a nearby iron stove, which had no fire in it, to knock out the dottle, and was, when last noticed by the mechanic, refilling his pipe. Neither the mechanic nor any one else either saw or heard Ferry strike a match or light his pipe. Both men were looking out the same window at the same automobile while it was under discussion, with the open bucket of gasoline between them a few feet only from each, the mechanic in front of the bucket and nearer the window and Ferry behind the bucket. The possibility of Ferry's own act having caused his injuries was fairly submitted to the jury under the defense of contributory negligence, and the finding of the jury for the plaintiffs must be taken as a rejection of that theory by the jury.

The defendant contends that its manner of using gasoline was a long-established practice and that there is no testimony that it was not a customary practice in similar shops. But negligence, if established, cannot be justified by custom. The rule is this respect is succinctly stated by Mr. Justice Holmes in Texas & Pacific R. Co. v. Behymer, 189 U. S. 468–470, 23 S. Ct. 622, 623, 47 L. Ed. 905: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." There is positive evidence in this case of the danger and lack of care in the use of an open bucket of gasoline, and also of lack of any reasonable necessity therefor, as there are noninflammable substitutes which could readily have been obtained and used for the particular purpose.

It has long been well-established law that permitting the escape of illuminating gas may constitute negligence. Thompson's Commentaries on Negligence, vol. 1, §§ 719, 720; Cooley on Torts (3rd Ed.) pp. 1497–1500; Consolidated Gas Co. v. Getty, 96 Md. 683, 54 A. 660, 94 Am. St. Rep. 603. In recent years the same principle has been applied to the permitted vaporization of gasoline and in a number of decided cases dealers in or users of gasoline have been held liable for damage caused by gasoline fires under circumstances bearing a general similarity to the present case. Standard Oil

of New York v. R. L. Pitcher Co., 289 F. 678 (C. C. A. 1st); Wilson & Son v. Blaustein, 144 Md. 289, 124 A. 886; Rushing v. Texas Co., 199 N. C. 173, 154 S. E. 1; Gibson Oil Co. v. Sherry, 172 Ark. 947, 291 S. W. 66; Sedita v. Steinberg, 105 Conn. 1, 134 A. 243, 49 A. L. R. 154; Standard Oil Co. v. Evans, 154 Miss. 475, 122 So. 735, 736; Adams v. Virginian Gasoline & Oil Co., 109 W. Va. 631, 156 S. E. 63–65.

The principal contention of appellant's counsel on this issue is that defendant's negligence with respect to the gasoline, even if established, was not the proximate cause of the fire. The point is made that the escaping gasoline vapor was harmless until energized by some factor of ignition, and that the latter, and not the gasoline vapor, was the proximate cause of the fire; and that there is no evidence that the defendant supplied or is responsible for the igniting factor. It is true that the evidence fails to disclose with certainty what was the factor of ignition or whether it was caused by the defendant, or by Ferry or by some third person. So far as Ferry is concerned the question was submitted to the jury under the defense of contributory negligence; and there was no definite evidence that the ignition was caused by a third person. It is at least doubtful whether the defendant would have been absolved from liability even if the spark or flame or other igniting factor had been produced by a third person, whose act was not imputable to Ferry. Consolidated Gas Co. v. Getty, 96 Md. 683, 691, 54 A. 660, 94 Am. St. Rep. 603; Cooley on Torts (3rd Ed.) p. 1498. Moreover, it appeared from the evidence that the use of the gasoline was wholly under the control of the defendant and the fire resulting therefrom occurred on its premises, and the defendant offered no evidence to explain the origin of the fire or to show that the igniting factor was due to some intervening cause which could not reasonably have been anticipated by it.

Under these circumstances, in our opinion, it cannot be said as a matter of law that the negligent use of gasoline by the defendant was not the proximate cause of the fire. Vaporization of the gasoline was certainly the first link in the chain of causation leading to the fire. It created the dangerous condition of the defendant's premises. Without its presence there would have been no fire in this case. In determining whether it was the proximate cause of the fire, the test is whether the resulting fire should reasonably have been a foreseeable event, or was the natural and probable consequence of the escape of the gasoline vapor. In our opinion the evidence in the case justified the submission of this question to the jury, as the determination of the proximate cause is ordinarily a question of fact to be determined by the jury in negligence cases. Dealers in gasoline, especially where the public is invited to their premises, must be held to have knowledge of the well-known dangerous characteristics of the substance and to know that a fire or explosion from gasoline vapor is likely to occur unless precautions are taken to exclude the possibility of an igniting factor. The ordinary activities in an automobile repair shop are likely to create an igniting factor for gasoline vapor. In addition, smoking in garages is, unfortunately, all too prevalent and in this case there is no evidence that the defendant even posted any "No smoking" signs. Only a few years before the accident in this case, a gasoline fire causing extensive damage occurred in the neighboring town of Rising Sun, only a few miles from Elkton, under somewhat similar circumstances. See Wilson & Son v. Blaustein, 144 Md. 289, 124 A. 886. Whether the defendant or its agents had actual knowledge of that fire does not appear, but that and numerous other cases of gasoline fires already referred to, are merely illustrative of the now well-known fact that escaping gasoline vapor is highly inflammable and that fires arising therefrom are a natural and probable result thereof. In several of the cases of fires above cited it was determined that the negligent escape of gas or gasoline vapor and not the igniting factor was the proximate cause of the fire. Consolidated Gas Co. v. Getty, 96 Md. 683, 54 A. 660, 94 Am. St. Rep. 603; Standard Oil v. Evans, 154 Miss. 475, 122 So. 735; Gibson Oil Co. v. Sherry, 172 Ark. 947, 291 S. W. 66.

With regard to Ferry's status as an invitee or licensee at the time of the accident, it is also our opinion that there was at least sufficient evidence for submission of this issue to the jury. The defendant was conducting a business of selling new and used automobiles and supplies and the repairing and servicing of cars. It is not disputed by appellant's counsel that the public was invited to the show rooms, but the contention is strongly urged that the repair shop was a private work shop to which the public was not invited and that there was no legally sufficient evidence to the contrary. But it

does appear from the record that the customers desiring repairs to be made on their cars customarily drove them into the repair shop through the driveway leading from the main street on which the show room is located. And other customers also visited the repair shop to purchase supplies. And there is further evidence that other persons, whether customers or not, habitually frequented the place. There was no evidence that the defendant had posted "No Admittance" signs or had at any time objected to the presence of customers or others in the repair shop although its manager visited the repair shop several times a day and must have been aware that the shop was commonly visited by the public. Ferry himself had prior to the particular occasion visited the repair shop on several occasions, once in the effort to purchase some used tires and once, at least, in connection with an upholstering repair job that he was doing for the defendant on one of its cars. The dominant purpose of his visit at the time of the accident was to obtain some machine oil presumably for his sewing machine but at the same time he took occasion to inspect and converse with the defendant's mechanic regarding the possibility of additional work on another automobile awaiting repairs.

There remains for consideration the question whether the trial judge with substantial correctness instructed the jury as to what facts in this case would justify the finding that Ferry was an invitee. The contention of appellant's counsel on this point is that the charge as a whole was too favorable to the plaintiffs. By the charge the jury were left entirely free to determine from the facts as they found them from all the evidence, whether the status of Ferry on the defendant's premises was that of an invitee or a licensee. In determining this ultimate fact the substance of the charge was that the jury could find that Ferry was an invitee if, considering the nature of the place and the use made of it by the public, Ferry reasonably felt free to enter it by the implied invitation of the defendant; but that if the jury determined that the repair shop was not a place the public was expected to visit, and that Ferry went there on the particular occasion not on any business but merely for his own convenience, then the jury would be justified in finding that he was a licensee and not an invitee. Upon consideration of the applicable rules of law, in our opinion the charge in this respect was not too favorable to the

plaintiffs. The substance of the charge was that the jury might find the status of Ferry was that of an invitee if the defendant by its conduct impliedly invited the public to its repair shop. It is well-established law that the defendant's invitation may be either express or implied. Bennett v. Railroad Co., 102 U. S. 577, 26 L. Ed. 235, is the leading federal authority applicable to this situation. It is there said by Mr. Justice Harlan, speaking for the court, at page 580 of 102 U. S.: "That the owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation. Railroad Co. v. Hanning, 15 Wall. 649 [21 L. Ed. 220]; Carleton et al. v. Franconia Iron & Steel Co., 99 Mass. 216; Sweeny v. Old Colony & Newport Rwy. Co., 10 Allen (Mass.) 368 [87 Am. Dec. 644]; Wharton, Negligence, sects. 349–352; Cooley, Torts, 604–607." And in Burke v. Md., D. & Va. R. Co., 134 Md. 156, at page 162, 106 A. 353, 355, the Maryland Court of Appeals, speaking by Judge Thomas, in a case of this character, said, "The invitation may be expressed or implied;" and then quoted with approval the following statement of law as contained in 29 Cyc. p. 457: "While invitation is not shown by mere toleration of a trespass, or passive acquiescence in permitting people upon the premises, or mere permission for them to be there, or by use without the owner's knowledge, yet, where the use has been so long continued as to lead the public to think the owner invited such use, a liability has been held to arise as from an implied invitation. Thus, where there had been a custom for persons to enter on premises for certain purposes, with the acquiescence of the owner, an invitation will be implied."

The effect of the evidence with relation to the particular purpose of Ferry's presence on the defendant's premises at the time of the fire was much discussed by counsel in the argument. For the appellant it was contended that Ferry's visit was for his personal convenience only, while for the appellee it was contended that the evidence warranted the finding that it was for a mutual business purpose. The evidence in the

record bearing on this point is not entirely satisfactory but if the distinction were controlling, it is our opinion that there was some evidence from which the jury might have found a common business purpose. In our view of the case, the distinction is not important, because where there is evidence of an implied invitation it is sufficient that the visit is for any lawful purpose. This is within the rule as stated in Bennett v. Railroad Co., supra.

For these reasons the judgment appealed from must be affirmed. .

Affirmed.