VIRGINIA R. BIGGS *v.* HUTZLER BROTHERS CO.

[No. 13, October Term, 1942.]

*Decided October 28, 1942.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, MARBURY, and GRASON, JJ.

*Wendell D. Allen,* with whom were *Armstrong, Machen, Allen & Eney* and *J. Lorimer Miller* on the brief, for the appellant.

*Max Sokol,* with whom were *Nice & Sokol, Deeley K. Nice, C. Milton Dickerson* and *M. William Adelson* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

This is an action for damages resulting from a collision between a customer and a salesgirl in the defendant's department store; issue was joined on the general issue plea filed by the defendant. The facts of this case are as follows:

On January 27, 1941, about 2 o'clock P. M., the plaintiff (appellant) was walking east on a twelve-foot aisle in the defendant's (appellee) large department store in Baltimore City. In the center of the aisle were tables upon which goods were displayed. The plaintiff passed the left side of a table and returned to about the center of the aisle. At this point this aisle in intersected by an aisle about four or five feet wide, which runs north and south. At the northwest corner of the intersection are four racks five feet eight inches high, two and a half feet wide, upon which coats were hung for inspection and sale. Between these racks there was space sufficient for customers and salesgirls to pass. These racks extended westerly along the twelve-foot aisle for seven feet and set back from each aisle about one foot. East of the small aisle was the children's department and in the view of the plaintiff was a table which exhibited children's snow clothes. She wanted to purchase a snow suit for her great-niece. When the plaintiff arrived at a point about the middle of the larger or main aisle and opposite the east end of the racks, she was looking and walking towards the goods displayed on the table beyond the smaller aisle. When she reached about the middle of the intersection of the two aisles, a salesgirl employed by the defendant, going south on the smaller aisle, walked into the plaintiff, causing her to fall to the floor, resulting in breaking her right wrist.

The plaintiff's version of this accident is conflicting. She testified, on direct examination, she wanted to see

a snow suit, and she did not know there was a smaller aisle before she was struck. She saw no one in the main or larger aisle in which she was walking towards the children's department. She thought when she was "about an arm's length back as she came abreast of the coats," she saw the salesgirl "come out," but what the girl came out of she did not state. There is, however, a wrapping room which opens on the east side of the smaller aisle north of the larger one, but how far north the record does not state. Plaintiff testified the girl was taller than she, was without a coat and hat. She saw the woman coming from her left about five feet away, and she thought she was an employee of the store. She was walking rapidly and hit the plaintiff with so much force that she went down where she was struck, and she did not have time to get out of the way. "She could have stopped if she had seen her maybe one second back, but she did not have time to get out of her way." She stated that she was closer to the rack than the middle of the aisle; the girl was an arm's length when she first saw her and there was not possible time to stop or get out of the way to avoid the accident."

On cross-examination she affirmed the truth of her testimony given by deposition—that she was walking in the aisle; had just cleared a center counter which made her practically in the middle of the main aisle; that she was about in the middle of the main aisle when the collision took place. When asked: "Did you see the lady before you collided with her," she answered: "She was just on edge, on the left of my eye; and I could have told you it was a lady; I could have told you she had no coat and hat on; I could have told you she was taller than myself; I could see that out of the corner of my left eye as she came from behind the coat rack." She further testified the salesgirl was in the main aisle right beside her when she first saw her. She could not say whether the girl was running or walking; nor could she say the girl was making steps, because my (the plaintiff's) face was straight ahead; and she never thought

of anybody coming on my side. "I told you," plaintiff testified, "I was walking straight ahead until I was conscious that the girl was coming towards me on my left. I saw her out of the corner of my eye." She could not tell how many steps the girl made and she did not watch her while she walked. Asked if there was anything to obstruct her view, she said: "But my head was straight in front of me." She said: "More or less, we were both trying to be on the same spot at the same time." The salesgirl testified she did not see the plaintiff until she was on the floor after the accident. The trial court permitted the case to go to the jury, a verdict for the defendant was rendered and from judgment entered thereon, the plaintiff appeals to this court.

Several questions are raised, but the main question is whether "due care" to be exercised in a case like this is reciprocal. It is urged that a storekeeper and his employees are under a higher degree of care for the protection of customers from injury in the use of the aisles of a store than a customer is bound to use for the protection of the storekeeper and his employees from injury.

To sustain this theory the cases of *Moore v. American Stores Co.*, 169 Md. 541, 182 A. 436, and *Chalmers v. Great Atlantic and Pacific Tea Co.*, 172 Md. 552, 192 A. 419 are cited. Each of these cases dealt with physical conditions of store premises. In one case a greasy floor of a store caused the accident; in the other a carton of canned goods in an aisle was the accidental cause. These cases are not in point. In this case there is no complaint at all of the physical condition of the aisles of the store. It involves a collision of two people coming in contact at intersecting aisles. It was the duty of each to use due care and caution to prevent injury to the other, and this duty applies as well to the customer as to the salesgirl. Due care and caution has many times been defined as what an ordinary prudent person would do under like circumstances. In the case of *Geoghegan v. G. Fox & Co.*, 104 Conn. 129, 132 A. 408, 409, it was said: "Due care in such a case is care proportioned to

the nature of instrumentalities involved and the circumstances ordinarily attendant. Due care may in any given case mean great care; the care is always to be proportionate to attendant requirements and hazard." In that case a man customer collided with a salesgirl as she came from behind a counter and entered an aisle. The court said: "It was his duty to be watchful of these surroundings, and to use ordinary care to avoid any danger likely to occur in the customary use of the premises."

The case of *Brisbin v. Wise Co.*, 6 Cal. App. 2d 441, 443, 44 P. 2d 622, 623, involved a collision between a customer and a salesgirl in a department store. In that case, in discussing instructions, the court said: "The first four of those given and complained of related to the duty of one in plaintiff's situation to use her sense of sight, to see what is plainly visible, to keep a lookout for clerks or other persons using the aisleways, and that it was just as much negligence to look in a negligent and careless manner as it was not to look at all. * * * It was just as much the duty of plaintiff to exercise the care of an ordinary prudent person for her own safety as it was the duty of defendants to exercise such care, that the rights of clerks in a store and customers are reciprocal, and that each owes the same degree of care to avoid injury to one another."

We think that the law is properly stated in the quotation from the California court, and that the trial court was correct in refusing, as between the plaintiff and defendant, to apply a different standard of negligence.

Exception was taken to the court's action in granting the defendant's sixth prayer. This prayer told the jury that the plaintiff was charged with knowledge that a clerk or other customer of the department store was likely to come into the aisle from any aisle connecting with the aisle in which the plaintiff was walking and that the plaintiff was required to exercise ordinary care to avoid any danger likely to occur in the customary use of the premises, as a walkway used by others as a walkway. This prayer was properly granted.

The seventh prayer told the jury that if they found from the evidence that the plaintiff could have avoided the collision had she looked for the approach of the defendant's clerk, then the verdict of the jury must be for the defendant. It was the duty of the plaintiff to look for others using the aisles of the store and had she looked in time to prevent the accident and took no precaution to prevent it she certainly could not recover. There was evidence in this case, from which the jury could infer that she didn't look or if she did look she looked in a way that was insufficient, careless and perfunctory. There was no error in granting this prayer.

Exception was taken to the granting of the defendant's eighth, ninth and tenth prayers. The error assigned in these prayers is that they stated to the jury that the duty to use due care applied both to the plaintiff and to the salesgirl and was reciprocal. For reasons heretofore given these instructions were correct.

By the defendant's eleventh prayer the jury were told that if they found from the evidence that the plaintiff could have avoided the happening of the accident by the exercise of ordinary care and caution on her part and if the jury find that she failed to do so then their verdict must be for the defendant. There was evidence in this record to support the granting of this prayer and there was no error in granting the same.

Just before the court charged the jury, counsel for plaintiff said to the court: "I have not drawn a damage prayer. Would your Honor instruct the jury on that?" And the court answered: "I cannot undertake to do the lawyer's work. If you draw one I will grant it." To this an exception was taken. In its charge the court told the jury: "That if the salesgirl was guilty of negligence and that the plaintiff, Mrs. Biggs, was not negligent, then there could be recovery in the case to the extent of the injury sustained and the damage resulting therefrom." Counsel was given an opportunity to present damage prayer, but did not do so. The court in its charge, in a general way, stated the measure of damage. We do not

56

think that appellant's counsel can complain when he had an opportunity but refused to present to the court a damage prayer. Furthermore, as the jury found a verdict for the defendant the plaintiff could not be damaged, because she had not submitted a damage prayer.

Finding no error in the rulings of the court below, the judgment will be affirmed.

*Judgment affirmed, with costs.*