CROWN CORK AND SEAL COMPANY, INC.
*v.* KANE, TO OWN USE AND USE OF EASTERN MOTOR EXPRESS, INC.

[No. 128, October Term, 1956.]

154

*Decided May 1, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Thomas G. Andrew,* with whom were *Rollins, Smalkin, Weston & Andrew* on the brief, for appellant.

*Samuel D. Hill,* with whom were *Altfeld & Altfeld* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for the plaintiff, appellee, on a jury's verdict in a negligence case. The appellant contends that the court erred in refusing to direct a verdict in its favor, and that there was reversible error in the court's charge to the jury.

The plaintiff was employed by Eastern Motor Express, Inc., as a truck driver's helper. In the course of his employment he had gone to the appellant's warehouse, to pick up or deliver loads, on a number of occasions over a period of years. To reach the loading platform trucks are driven past a guard at the outer gate who checks the purpose of the visit. A shipping clerk, or foreman, having an office at the end of the platform, is in charge of the warehouse and directs the placement of trucks in the yard and against the loading platform. Other employees, known as "checkers", see that the various materials called for in the shipping documents are loaded or unloaded by employees who operate electrically driven trucks, and their helpers. The material in the warehouse, consisting of corks, bottle tops and similar articles, is stored in cartons piled "high up" on skids, with longitudinal and lateral aisles about eight feet wide between. No smoking is permitted in the yard, on the loading platform, or in the warehouse, and signs to that effect are posted. However, smoking is permitted in a room in the cellar of the warehouse, at the foot

of a stairway, in which there is a large receptacle filled with sand for extinguishing cigarettes. To get to this room from the loading platform it is necessary to go past the office and pass through the warehouse for a distance of about one hundred and sixty feet.

On the day in question, the plaintiff arrived at the warehouse and reported to the shipping clerk. He was told by the shipping clerk that it would be some time before his truck could be loaded and to "take it easy". He went through the warehouse to the smoking room as he had often done before. After smoking there for about fifteen minutes, he was returning through the warehouse when he was struck and injured by a loaded fork lift truck that was being backed along an intersecting aisle. Neither the operator of the truck nor the plaintiff saw each other prior to the collision.

Kane testified that he had used the smoking room on perhaps thirty previous occasions. He first learned of it six or seven years ago when one of the checkers told him to go down there, and not to smoke elsewhere. About two months before the accident, he started to smoke on the loading platform and a checker told him to go down in the cellar and smoke. He testified that many of the other truckers habitually used the room. The operator of the fork lift truck testified that he knew that truckers used the room, but that it was maintained for the use of the employees of the company. The foreman of the shipping department testified the smoking room was "something set up by the Fire Marshal and myself. We recognized the fact that our employees were galavanting all around the place and we could save money by providing an area for them." It was "absolutely not" provided for visiting truckers and helpers. He had seen "some sneak in" and he "chased them right back out". The checkers had no authority to offer them the use of the room. If truckers wanted to smoke, they were supposed to go off the company premises.

The appellant does not question the legal sufficiency of the evidence of negligence to present a jury question. Cf. *Biggs v. Hutzler Brothers Co.*, 181 Md. 50. It contends that on the evidence presented the plaintiff was at most a bare li-

censee, to whom the company owed no duty, except to abstain from wilful or wanton misconduct. The case thus turns upon the status of the plaintiff at the time of his injury. If he was an invitee it is conceded that there was evidence of negligence in striking him. On the other hand, if the plaintiff was only a licensee, it is conceded that the appellee has not made out a case. It is well settled in Maryland that a licensor owes no duty to a licensee, except that, if aware of his presence, the licensor must not injure him wilfully or entrap him. *Peregoy v. Western Md. R. R. Co.,* 202 Md. 203, 207, and cases cited. It was there said that "A licensee is one privileged to enter another's land by virtue of the possessor's consent, for the licensee's own purposes. * * * An invitee or business visitor is one invited or permitted to enter or remain upon land for a purpose connected with or related to the business of the occupant." See also *Austin v. Buettner,* 211 Md. 61, 66 & 80, *et seq.,* and *Restatement, Torts,* § 332, defining "business visitor", the term preferred in the *Restatement,* as one "invited or permitted to enter or remain * * * for a purpose directly or indirectly connected with business dealings between them." In *Carroll v. Spencer,* 204 Md. 387, 393, it was held that a child playing in a house under construction, whose presence was known to the watchman, was not an invitee. It was said that "Acquiescence is not invitation, and at most, changes the status of the trespasser to that of bare licensee, to whom the owner owes no greater duty than to a trespasser." See also *Jackson v. Penna. R. Co.,* 176 Md. 1. It was noted in the *Carroll* case that Maryland has followed what is known as the Massachusetts rule, which denies that an owner or occupier owes a duty to avoid negligent injury to a trespasser or licensee whose presence is known, rather than the Michigan rule favored by the Restatement.

Smoking is a very widespread habit. The plaintiff clearly came on the premises of the defendant for business purposes in which each party had an interest. The plaintiff was required to wait on the defendant's premises as a matter of convenience to the defendant, and, indeed, he was expressly told to "take it easy" by the person in charge, and had been

told by subordinates, on previous occasions, to use that part of the premises reserved and adapted for the use of those who wanted to smoke. For present purposes we may assume that there was no express invitation because of the alleged lack of authority in the subordinates, although it might well be contended that they had apparent authority to extend an invitation. In *Banks v. Montgomery Ward & Co.*, 212 Md. 31, 43, it was said: "It is held generally that an employer cannot escape liability for the acts of his agent by placing limitations on his authority not known to others dealing with him nor properly inferable from the nature of his employment. *Lister v. Allen*, 31 Md. 543." We also assume, without deciding, that under Maryland law the mere acquiescence of the subordinates, without more, would place the plaintiff in the status of a licensee, and that there is no distinction, so far as liability to a licensee is concerned, between active and passive negligence on the part of the defendant.

The appellant contends that the appellee was not an invitee or business visitor at the time of his injury, because, in going to and from the smoking room, he was not acting for their mutual benefit, or promoting any business interest of the owner, but acting solely for his own personal pleasure or benefit. This argument overlooks the fact that at least one of the purposes for furnishing the smoking room was to reduce the fire hazard, a purpose that would apply not only to employees but to other persons lawfully upon the premises. The appellee was unquestionably a business visitor when he entered the gate, and he would not lose his status during an enforced period of waiting, unless he ventured into an area that was clearly or obviously reserved for employees. Courtesy and accommodation to employees of regular customers, sent to receive goods, is not unrelated to business advantage. The jury might well have disbelieved the foreman's statement that such employees were supposed to go out into the street to smoke. Since no other waiting room was provided, it is not an unreasonable inference that it was to the company's interest to have waiting visitors use the cellar, where they would not be in the way of other employees, and would not be tempted to smoke in forbidden areas.

The cases that proceed upon the benefit theory rely, in many instances, upon rather remote and indirect benefits. Thus, in *Austin v. Buettner, supra,* the business visitor entered the premises, a tavern, to solicit business for his employer, a banking institution, with whom the defendant had had no previous dealings. In *Peregoy v. Western Md. R. R. Co., supra,* the plaintiff was injured in a railroad yard while loading material stored there by his employer (a patron of the railroad) free of charge although with the consent of the railroad. Other cases accord the status of invitee to persons returning goods purchased, or reentering premises to retrieve an article left behind. But there is another theory of liability for negligence that does not depend on mutual benefit at all. The cases all recognize that an invitation may be express or implied, and there are many cases in which an invitation has been implied from circumstances, such as custom, the acquiescence of the owner in habitual use, the apparent holding out of premises to a particular use by the public, or simply in the general arrangement or design of the premises.

This theory is strongly supported by the most recent commentators on the subject. For a full discussion, see *Prosser, Torts* (2d Ed.), § 78, and *Harper & James, Law of Torts* (1956 Ed.), § 27.12. It is pointed out that the test of mutual benefit, in its extended form, makes liability depend in many instances upon the undisclosed intention of the visitor, a subjective test, whereas the other theory is objective in that it stresses custom and the appearance of things. It is said that the pecuniary benefit stressed in the *Restatement, Torts,* §§ 332, 343, was a minority view advocated by Bohlen, its distinguished reporter. *Prosser, supra* (p. 456), says: "The Restatement notwithstanding, the second theory [implied invitation] is now accepted by the great majority of the courts, and many visitors from whose presence no shadow of pecuniary benefit is to be found are held to be invitees." In dealing with the area of invitation (p. 458), he says, in effect, that liability depends upon the evidence of encouragement to go to the unusual place.

The theory of implied invitation has been recognized in a

number of Maryland cases, although they have been rested, in whole or in part, upon circumstances indicating at least some economic benefit. In *Kalus v. Bass,* 122 Md. 467, in which the child of a prospective tenant was held to be an invitee by implication, Judge Urner, for the Court, distinguished *Benson v. Baltimore Traction Co.,* 77 Md. 535, where one of a party of students fell into a vat on the company's premises while making a tour of inspection by permission previously asked and obtained, on the ground that the visit was not in any manner invited or induced by any act of the defendant company. He cited with approval this passage from *Phillips v. Library Co.,* 55 N. J. L. 307, 315: " 'The gist of the liability consists in the fact that the person injured did not act merely on motives of his own, to which no act or sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used.' " To the same effect he cited *Sweeny v. Old Colony and Newport Railroad Company,* 92 Mass. 368, 372. In that case Bigelow, C. J., said (p. 374): "The true distinction is this: a mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby."

The same theory was applied in *Burke v. Md., D. & Va. R. Co.,* 134 Md. 156, in which the plaintiff was struck by a baggage truck on a steamboat wharf where he had gone to fish, and with the undisclosed intention of buying a newspaper on a steamer moored to the dock. Invitation was implied from the fact that the company had customarily allowed persons other than passengers to fish on the dock, and to board the excursion steamer to make purchases at the store

maintained thereon for the convenience of passengers. In *Jackson v. Hines,* 137 Md. 621, the plaintiff, who came to a railway and steamboat terminal to meet a relative, was injured on a walkway which the defendant claimed was for the use of employees only, although no notices to that effect were posted. It was held that invitation could be implied from the appearance of the walkway and its customary use by passengers and others. See also *Pellicot v. Keene,* 181 Md. 135, where recovery was denied to the child of a customer who went behind a counter in a store, in the absence of any evidence of a custom permitting such use. In *Elkton Auto Sales Corporation v. State of Maryland,* 53 F. 2d 8 (C. C. A. 4th), the plaintiff was an upholsterer having a place of business near an automobile repair shop. He went to the shop to obtain some oil for his sewing machine, and while there solicited or discussed an upholstery job on an automobile in the shop for repairs. He was killed in a gasoline fire, allegedly due to the negligence of the defendant. There was evidence that customers often brought automobiles into the shop for repair, and there were no signs forbidding the public to enter. Judge Chesnut, affirming Judge Soper in the lower court, said: "For the appellant it was contended that Ferry's visit was for his personal convenience only, while for the appellee it was contended that the evidence warranted the finding that it was for a mutual business purpose. The evidence in the record bearing on this point is not entirely satisfactory but if the distinction were controlling, it is our opinion that there was some evidence from which the jury might have found a common business purpose. In our view of the case, the distinction is not important, because where there is evidence of an implied invitation it is sufficient that the visit is for any lawful purpose." The appellant relies strongly upon *Gordon Sleeprite Corp. v. Waters,* 165 Md. 354, where the plaintiff went to the office of the defendant to collect a bill, and finding no one there, entered the factory where he was injured, and it was held that he lost his status of invitee when he did so, and was bound to take the premises as he found them. That case is distinguishable, however, on the ground that there was no evidence of custom

or inducement to support an implied invitation. There was also a complete absence of inducement in *Carroll v. Spencer, supra*.

The same line of distinction appears in other cases dealing with situations where customers or other persons are injured on their way to or from toilets on premises visited by them. Liability is found where there is evidence of a holding out to public use, or the appearances are such as to support an inference of implied invitation, but not where it is made clear to the user that the use is available to employees only, or there are facts that negative any inducement. Among many cases on the subject, see *O'Brien v. Harvard Restaurant & Liquor Co.*, 38 N. E. 2d 658 (Mass.); *Lerner v. Hayes-Bickford Lunch System*, 51 N. E. 2d 774 (Mass.); *Dickau v. Rafala*, 104 A. 2d 214 (Conn.); *Campbell v. Weathers*, 111 P. 2d 72 (Kan.); *Liveright v. Max Lifsitz Furniture Co.*, 187 A. 583 (N. J.); *Collins v. Sprague's Benson Pharmacy*, 245 N. W. 602 (Neb.), and *Sulhoff v. Everett*, 16 N. W. 2d 737 (Ia.).

In the instant case, we think there was evidence to support an implied invitation. The facts that the room was set aside for smoking, that its location was made known to the plaintiff by the checkers on two occasions, that it was habitually used by visiting truckers, and this fact was known to the foreman and the other employees, the absence of any notice to the plaintiff that it was intended solely for employees, and other circumstances in the case, lead us to the conclusion that there was legally sufficient evidence to take the case to the jury on this theory.

The final question is whether the court erred in its charge to the jury. The court correctly stated that the first question was the status of the plaintiff at the time of his injury. He stated that there were "two possibilities: one, that he was a trespasser; two, that he was an invitee."

It may be noted that the defendant did not ask for any instruction as to the third possibility, that the plaintiff was a licensee. The sixth and seventh prayers of the defendant simply asked for an instruction that if the plaintiff's purpose in going through the warehouse was for his own benefit or convenience, and not for any benefit to the defendant, then he

could not recover. These prayers were properly refused because they did not cover the possibility of implied invitation relied on by the plaintiff, and the objection to the charge on this ground was properly overruled. Again, there was no objection to the charge on the ground that it did not instruct on the intermediate possibility that the plaintiff was a licensee. The assumption on which the case was tried was that the duty of care owed to a licensee is no higher than that owed to a trespasser, and that the plaintiff could not recover unless he was an invitee. In view of the complete absence of objection, the appellant cannot now complain of the oversimplification.

The court charged: "If you find that Mr. Kane knew that the smoking room was for employees only and knew he had no business going down there, he was a trespasser. * * * in order to be an invitee a person must be invited to come onto the premises. That doesn't mean that someone must give him an engraved card with an invitation on it; but that by his actions and general arrangements the person owning the premises should give the person involved the right to understand that he is expected to come onto them." After summarizing the testimony, the court further said: "If you believe that Mr. Kane knew, or had reason to believe that he should not go down to the smoking room, then he was a trespasser. If you believe that Mr. Kane apparently had authority, or had permission, to go down there to smoke, then you will find that he was an invitee."

The defendant objected to this part of the charge only on the ground that it told the jury "that the plaintiff had to know he was a trespasser in order to be a trespasser, and that it is unnecessary for him to know it." But in the remarks just quoted the court modified and corrected his first broad statement. We have often said that a charge must be considered as a whole, and that verbal slips, or isolated phrases will not be condemned unless clearly prejudicial. Cf. *West v. Belle Isle Cab Co.,* 203 Md. 244, 250; *Rabinovitz v. Kilner,* 206 Md. 455, 464; *Texas Company v. Pecora,* 208 Md. 281, 298. "Reason to believe" would deny recovery even in the absence of knowledge, and further, recovery was limited to

invitation in the sense "that by his actions and general arrangements the person owning the premises should give the person involved the right to understand that he is expected to come onto them." We think the charge as a whole fairly presented the issue of implied invitation from all the circumstances, and the jury was not misled by the alleged inconsistency in the charge on the point of knowledge.

*Judgment affirmed, with costs.*

PRESCOTT, J., filed the following dissenting opinion:

It is with sincere regret that I am unable to agree with my learned colleagues in the majority opinion in this case. If time would permit, a more thorough and careful analysis of our differences could be presented; but, with the present case load, that time is not available.

The facts are stated in the majority opinion, so they will not be repeated. A careful examination of them will disclose that they are certainly meagre; and, in my judgment they are totally insufficient upon which to base a finding of an "implied invitation" to the appellee to use that portion of appellant's premises that it had designated as a smoking room for its employees. The facts stated should be supplemented by saying that the statement "smoking is permitted in a room in the cellar of the warehouse" should also state that this permission was granted by the appellant to its employees; and, the distance from the truck that appellee left, to the smoking room is approximately 160 feet, while the distance to the gate that would have taken him off appellant's property was only 200 feet, a difference of only 40 feet, where he could have smoked at will. I have no quarrel with the *principles of law* relative to "implied" invitation stated in the majority opinion; but, it is with the *application of the facts* of this particular case to those principles of law. Every lawyer knows that inferences, presumptions and implications have their proper and valuable places in the law, but they can be carried too far. The question of who is, and who is not, an "invitee" when one is upon premises that belong to another, has been the subject of many judicial decisions.

There are two tests currently applied, one called the "economic benefit" test, and the other the "invitation" test. The first proceeds upon the assumption that affirmative obligations are imposed on people only in return for some consideration or benefit. The other does not deny that "invitation" may be based upon economic benefit, but it does not regard that as essential. It bases its foundation on the fact that the owner by his arrangement of the premises or other conduct has led the entrant to believe that the premises were intended to be used by visitors for the purpose which the entrant was pursuing. (See foot-note 2).

While I have not completely exhausted the subject, I have found no previous case in Maryland where the "economic" theory has been totally disregarded;[1] and none is cited in the majority opinion; but the facts herein do not warrant the finding that the appellee was an "invitee" under either of the above named theories. The appellant is a private business concern; it does not conduct a public place such as a grocery store, a restaurant or a beauty shop, where the public generally is invited. It had set aside for the use of its employees a space in the basement to smoke. The appellee was unquestionably an invitee when he first arrived at appellant's place of business. But, all of the authorities agree that the invitee is limited to the "area of invitation", which is that part or parts of the premises that the owner has thrown open to him for the *purpose* which makes him an invitee. *Prosser on Torts,* 2nd Ed. p. 458; *Gordon Sleeprite Corp. v. Waters,* 165 Md. 354, 168 A. 846. I am unable to discover where the evidence discloses any "economic" benefit whatsoever to the appellant when the appellee left the truck to go to the smoking room or where the appellee was on any business, direct or indirect, of the appellant; and the testimony also is totally lacking in showing any inducement or encouragement

---

1. This Court said as late as *Austin v. Buettner,* 211 Md. 61, 68, 124 A. 2d 793. "We think that banking connections and services are of evident actual or potential business advantage or benefit". This had previously been the recognized test in Maryland in this class of cases. It obviously has no application to the type of cases mentioned in foot-note 2.

offered by the appellant to the appellee to enter the remainder of its premises. The most that the appellee could possibly expect from the evidence was that he was a licensee.

I would like to comment on one other phase of the opinion. It states "there is another theory of liability for negligence that does not depend on mutual benefit at all" * * * "* * * the second theory (invitation test) is now accepted by the great majority of the courts, and many visitors from whose presence no shadow of pecuniary benefit is to be found are held to be invitees." With this statement of the law, I agree, but only to its application in proper cases, as outlined by the authors who are quoted.[2]

The majority opinion further states: "The cases that proceed upon the benefit theory rely, in many instances, upon rather remote and indirect benefits."; and it cites thereunder *Austin v. Buettner,* 211 Md. 61, 124 A. 2d 793, and *Peregoy v. Western Md. R. R. Co.,* 202 Md. 203, 95 A. 2d 867. This statement is accurate insofar as the *Buettner* case is concerned, but that case repeated the definition of an invitee (which is not followed in the present case) given in the *Peregoy* case, and in Chief Judge Brune's words that definition was "in much the same terms as are used in par. 332 of the *Restatement, Torts*".[3] And the opinion in the *Buettner*

---

2. This quotation is taken from *Prosser on Torts,* p. 456. It is immediately followed by the class of invitees it is intended to cover: "The list has included persons attending free public lectures, church services and meetings, college reunions; free spectators invited to public places of amusement; those who enter in the reasonable expectation of buying something not sold on the premises, or come in response to advertisements of something to be given away; and a long array of members of the public making use of municipal parks and playgrounds, swimming pools, libraries, comfort stations, wharves, golf courses, community centers, and state and federal property." There is little doubt that this class should be included as invitees, but, this author, and no other that I have read, make any suggestion that it includes a private business concern with a smoking room in its *cellar.*

3. As stated by Chief Judge Brune, the definition of an invitee in the *Peregoy* case, and repeated in the *Buettner* case, is unquestionably taken from par. 332. *Restatement, Torts.* Yet the majority

case was careful to point out the words quoted in foot-note 1. It is, however, difficult to reconcile the above quotation with the facts in the *Peregoy* case. In that case the use of the railroad property had continued for 22 years. This is what the opinion said about the benefit. The storage of the material was "not a mere casual use of the property for the sole use of Pen-Mar * * * storing these articles on the land of the railroad was to its advantage * * *. It promoted freight business for this carrier. * * * The *mutuality* of the *benefits* is *palpable* from the undisputed facts." (emphasis supplied) Other Maryland cases, too numerous to mention, may be cited where the "economic" benefit test has been applied, but none has been named that supports the holding made by the majority.

The majority opinion also quotes from *Sweeny v. Old Colony and Newport Railroad Company*, 92 Mass. 368, 372, which is a leading case on the question of implied invitations. This quotation, in the abstract, lends some support to the majority holding; but, when the facts to which it relates are known, it adds little, if anything thereto. The railroad company established a private grade crossing over its tracks on its property. It permitted the public to use it for years, and placed a flagman there to assist the public in safely crossing. As a result of the flagman wrongfully signaling the plaintiff onto the tracks, the railroad company was held accountable for the plaintiff's injury. The encouragement and inducement held out in that case so as to make the plaintiff an implied invitee was quite different, in my opinion, from a private business concern with a smoking area for its employees in its cellar.

I shall refer individually to only one more case cited in the majority opinion: *Elkton Auto Sales Corporation v. State of Maryland*, 53 F. 2d 8 (C. C. A. 4th). In that case, the facts established sufficient economic benefit to go to the jury.

---

opinion, later on, quotes Prosser as saying that par. 332 is a minority view, and, without specifically overruling the *Buettner* and *Peregoy* cases (as well as all previous Maryland decisions on the point)⁷ fails to follow them.

It was decided in 1931, yet, I have not found it cited nor followed in any Maryland decision since, including the *Buettner* and *Peregoy* cases.

The opinion in one paragraph cites seven out-of-State cases on implied invitees. In each case, the defendants conducted a business to which the public in general was invited, such as restaurateurs, beauty shops, grocery stores, etc. In none of them does the holding on the facts go so far, nor nearly so far, as the ruling in the present case. In fact, they have little analogy to the case at bar.

There is one paragraph in the opinion that, to me, is extremely unfortunate even though it be *obiter dictum*. While it makes no direct holding that there was an express invitation by reason of the statement that two checkers allegedly told the appellee that he could use the smoking room it does say: "* * * it might well be contended that they (the checkers) had apparent authority to extend an invitation." The testimony specifically discloses that the checkers had no such authority and the appellee testified that he knew what the checkers' duties were. The opinion then quotes from the *Banks* case in 212 Md., wherein it is stated: "It is held generally that an employer cannot escape liability for the acts of his agent by placing limitations on his authority not known to others dealing with him *nor properly inferable from the nature of his employment.*" (Italics supplied.) In that case, we were dealing with the apparent authority of the *general manager* of a large department store to institute criminal proceedings; in this case, the majority opinion refers to the apparent authority of a checker, whose sole duty it was to see that "the various materials called for in the shipping documents are loaded or unloaded by employees". To intimate that the appellant would be responsible for the apparent authority of such an employee to throw open its entire business establishment to invitation seems to me to be contrary to all reason and authority and to completely ignore the above underscored portion of the *Banks* opinion.

In my judgment, the Court of Appeals will hear from this statement many times in the future, as well as the *nisi prius* Courts throughout the State, where it will be quoted as au-

thority for the most menial subordinates to make very valuable concessions on behalf of their principals or masters.

To conclude, I think the principle announced and followed in the majority holding was intended to cover the type of cases such as are mentioned in foot-note 2 and the *Sweeny* case, and not to such facts as we are dealing with in this case, i. e., a private business corporation with a place in its basement set aside for smoking purposes for its employees. Furthermore, with all due deference to my colleagues, I think it does violence to the many Maryland decisions on the subject. It seems that industry, business and those that insure against liability are entitled to rely upon a reasonable stability in the law. They should know with reasonable certainty that for which they are responsible, and that for which they are not responsible. This would permit a better opportunity to appraise the costs and liabilities involved in the normal and logical conduct of their affairs.

In my opinion, appellant's demurrer prayer B should have been granted.