Q: Did you feel it was dangerous for him to use your car?

A: I was feeling it is a new car and it's kind of expensive, so I didn't want—you know, I feel maybe Alexie would have get into an accident so I didn't want him to use my car anymore.

Q: Why did you feel he might get into an accident?

A: Because he is young, okay, and he don't know—he don't know the value of things.

(Dep. of Rosario at 21.) Ms. Rosario's concerns do not indicate that she had any knowledge, before the accident, that her nephew was unfit to drive. Her testimony was that in the year she had the car, she had only allowed one other person, her boyfriend, to use the car once. (Dep. of Rosario at 44.) The following is also part of Ms. Rosario's deposition testimony:

Q: Is there a particular reason that you didn't want him to use it anymore after you let him the first time?

A: I just—something told tell me not let him use my car no more. Just for no

reason, I didn't want him to use the car anymore.

Q: Was there anything that he did that influenced your decision to not allow him to use your car?

A: No. . . .

(Dep. of Rosario at 20–21.) Appellants have failed to show that Ms. Rosario's comments were evidence of anything more than a general reluctance to let others use her car. We hold that appellants have failed to produce evidence which, when considered in light of their burden of proof at trial, could be the basis for a jury finding in their favor. *See J.E. Mamiye & Sons,* 813 F.2d at 618. Appellants have shown no more than some doubt as to a material fact. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.

## CONCLUSION

Appellants have failed to present evidence that there are any genuine issues of material fact which would preclude summary judgment. Our review of the record uncovers no disputed material facts regarding (1) an entrustment; (2) to an incompetent or unfit person; (3) with the knowledge that he or she is incompetent or unfit. The Territorial Court order granting summary judgment will be affirmed.

---

**Gary BASS, Plaintiff,**

v.

**HARDEE'S FOOD SYSTEMS, INC., Defendant.**

**No. Civ. A. AW 97–657.**

United States District Court,
D. Maryland,
Southern Division.

Nov. 4, 1997.

Peter B. Krauser, Largo, MD, Gary A. Stein, Washington, DC, for Plaintiff.

Daniel Joseph Moore, Lori L. Blair, Towson, MD, for Defendant.

## MEMORANDUM DECISION

WILLIAMS, District Judge.

### I

In this diversity case, the plaintiff Gary Bass is suing defendant, Hardee's Food Systems, for negligence. At the time of the events in question, Hardee's owned several "Roy Rogers" restaurants in the state of Maryland. Hardee's now brings a motion for summary judgment. In ruling on this motion, the Court has considered the briefs of the parties, the arguments of counsel at a hearing in open court, and the entire record.

### II

On January 20, 1997, Mr. Bass drove with his ex-wife and daughter to a Roy Rogers restaurant owned by Hardee's. Mr. Bass and his daughter went in and bought fried chicken. His daughter returned to the car with her mother while Mr. Bass walked to a gas station next to the restaurant. to buy a bottle of soda. Mr. Bass then returned to the Roy Rogers parking lot to get to his car. While walking through the lot, he slipped and fell. The soda bottle shattered and a piece of glass went into Mr. Bass's eye. Mr. Bass lost his eye as a result of the injury.

### III

#### A.

Summary judgment is appropriate where there is no genuine dispute of material fact and when the moving party is entitled to

judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The evidence of the non-movant is to be believed and all justifiable inferences drawn in his favor, but a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 164 (4th Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985)). Applying these principles to the record, the Court concludes that summary judgment must be denied.

### B.

■■■ Under Maryland law, the standard of care owed by a possessor of land to those coming upon the property depends on whether the person entering the land is an invitee, licensee, or trespasser. "An invitee is a person invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business; the owner must use reasonable and ordinary care to keep his premises safe for the invitee and to protect him from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his safety will not discover." *Rowley v. Mayor and City Council of Baltimore,* 305 Md. 456, 465, 505 A.2d 494 (1986). Defendant argues that because Mr. Bass left the premises, he was no longer an "invitee" when he returned for his car. Because Mr. Bass was, at best, a bare licensee, defendant owed Mr. Bass only a duty not to willfully injure or entrap him. E.g., *Baltimore Gas & Electric v. Lane,* 338 Md. 34, 44, 656 A.2d 307 (1995). Hardee's argues that summary judgment is warranted because there is no evidence of intentional misfeasance here. Alternatively, defendant argues that even if Mr. Bass was an invitee, there was no evidence that his injuries were the result of defendant's negligence, so summary judgment must still be granted.

■■■ Assuming Mr. Bass was an invitee, there exists a genuine factual dispute as to whether defendant was negligent. Again, a business has a duty to "use reasonable care to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his safety, will not discover." *Bramble v. Thompson,* 264 Md. 518, 521, 287 A.2d 265 (1972).

In arguing that there was no breach of this duty, Hardee's points out that a plaintiff does not meet his burden of proof "if it appears that the injuries resulted from either defendant's negligence or some other cause, for the existence of which defendant, is not responsible, unless the plaintiff excludes the independent cause as the proximate cause of the injuries." *Rawls v. Hochschild Kohn & Co.,* 207 Md. 113, 119, 113 A.2d 405 (1955). Hardee's observes that, from Mr. Bass's own testimony, he did not know what he fell on. He testified that he was wearing leather soled shoes at the time. No eyewitnesses to the fall have been found. Further, if he slipped on ice, the ice might have come from cars recently entering the parking lot or Mr. Bass's own shoes from the walk he had taken, rather than a consequence of a breach of duty by Hardee's.

Nonetheless, as Mr. Bass notes, there is evidence in the record supporting the conclusion that his injury resulted from a breach of duty by defendant. While Mr. Bass's ex-wife did not see the fall, she stated that there was a patch of ice right where she found Mr. Bass sitting on the ground. Mr. Bass testified that he did not move from the spot where he fell. The Roy Rogers manager found ice in the area where Mr. Bass fell. A reasonable jury could conclude that Mr. Bass slipped on ice. Further, a reasonable jury could conclude that defendant did not use "reasonable care" to protect Mr. Bass from harm. The accident occurred in January, a few days after a period of snowfall. An expert witness, trained in architecture and engineering, studied climate reports, the testimony of the witnesses, and examined the site. He concluded that the restaurant driveway was sloped to the middle, that it was in poor repair, and that roof runoff was directed toward the low-point of the driveway and pooled and froze in the very area where Mr. Bass fell. The expert opined that the dangerous condition was predictable at the

time of the accident, reasonable examination would have revealed the condition, and remedial steps would have cured the icy buildup.

■ Thus, assuming Mr. Bass was an invitee, summary judgment is not appropriate. The key dispute between the parties is whether Mr. Bass was in fact an invitee at the time of his injury.

In support of its contention that Mr. Bass was not an invitee at the time of his injury, Hardee's relies upon *Levine v. Miller*, 218 Md. 74, 145 A.2d 418 (1958). In *Levine*, the owners of an apartment gave a young girl permission to use a locked recreation room as a day camp for smaller children. The girl returned the key to the owners but left the door unlocked. Six hours later, she returned without the knowledge or permission of the owners. She was injured when a radiator, just placed in the room, fell on her. The Court in *Levine* observed that "[o]ne may be an invitee or business visitor ... for a limited time, and, without changing location, [become a licensee or trespasser] by the lapse of time." *Id.* at p. 79, 145 A.2d 418. Quoting from the First Restatement of Torts, the court explained that "[a] business visitor ceases to be [an invitee] after the expiration of a reasonable time in which to accomplish the business purposes of the visit." *Ibid.*, quoting Restatement, Torts, § 343, comm. c. Hardee's also points to *Hickman v. First National Bank*, 112 Mont. 398, 117 P.2d 275 (1941), a case cited with approval in *Levine*, in which the Montana Supreme Court held that "one who went into a bank building and its elevator as an invitee, who, after her business purpose ended, made several trips up and down the elevator with her mother for the purpose of completing a conversation, had ceased to be an invitee, and was a mere licensee at the time she was injured by the fall of the elevator." *Levine*, 218 Md. at p. 79, 145 A.2d 418 (describing the facts of *Hickman*). Similarly, defendant maintains that in this case, Mr. Bass's business purpose with Roy Rogers was complete when he came back onto the parking lot; accordingly, he was no longer an invitee.

Initially, it cannot be summarily concluded that Mr. Bass' return to the parking lot was unrelated to his business purpose. The case-law makes clear that "invitee" status may be found where a customer enters business property for "purposes connected with *or related* to the owner's business." E.g., *Sherman v. Suburban Trust Co.*, 282 Md. 238, 242, 384 A.2d 76 (1978) (emphasis added); *Murray v. Lane*, 51 Md.App. 597, 599, 444 A.2d 1069 (1982). The Maryland Court of Appeals has adopted the Restatement view defining a "business visitor" as "one 'invited or permitted to enter or remain ... for a purpose directly *or indirectly connected* with business dealings between them." *Crown Cork and Seal v. Kane*, 213 Md. 152, 157, 131 A.2d 470 (1957), quoting Restatement, Torts, § 332 (emphasis added). Inasmuch as Mr. Bass had just bought chicken from the store and made a slight detour, it cannot be said that his re-entry was entirely unrelated to his business transaction. It seems obvious that, in connection with his business purpose, Mr. Bass was invited to come onto Roy Rogers property, make his purchase, and leave with his goods. In attempting to return to the property so that he could retrieve his family and leave with his purchase, Mr. Bass was injured. The Court cannot conclude, as a matter of law, that a momentary interruption between Mr. Bass's purchase and his egress with his goods completely extinguishes the business purpose that originally brought him onto defendant's property. Thus, a reasonable jury could conclude that Mr. Bass's return to the Roy Rogers parking lot was at least indirectly connected with his business purpose of purchasing chicken, and that Mr. Bass remained within the scope of his invitation to do business with Roy Rogers when he was hurt.

■ Moreover, invitee status may be proven in two ways: (1) by a showing of "mutual benefit", or (2) by proof of an "implied invitation." *Crown Cork and Seal v. Kane*, 213 Md. 152, 131 A.2d 470 (1957). The cases conferring invitee status upon a person only when entering premises for a "business purpose" appear to rest upon a theory of mutual benefit to both customer and proprietor. See *Howard County Bd. of Ed. v. Cheyne*, 99 Md.App. 150, 155, 636 A.2d 22 (1994) ("The mutual benefit theory is typified by the per-

son who enters a business establishment to purchase goods or services").

"But there is another theory of liability for negligence that does not depend on mutual benefit at all. The cases all recognize that an invitation may be express or implied, and there are many cases in which an invitation has been implied from the circumstances, such as custom, the acquiescence of the owner in habitual use, *the apparent holding out: of the premises to a particular use by the public,* or simply the general arrangement or design of the premises." *Crown Cork,* 213 Md. at p. 159, 131 A.2d 470 (emphasis supplied). The case primarily relied upon by plaintiff, *Hutzler Brothers Co. v. Taylor,* 247 Md. 228, 230 A.2d 663 (1967), is instructive. There, a customer who parked in the parking lot of a department store was injured as she left the lot. She did not intend to shop at the department store, but at other nearby stores in the same shopping center. In concluding that the customer was nonetheless an invitee, the court explained that "the design and general arrangement of the premises may in themselves be an inducement to the public to make use of the parking area . . . . It seems obvious to us that the public is invited to enter, make use of the parking area and visit the stores, all to the end that lookers may become buyers." *Id.,* 230 A.2d at p. 669. Similarly, in this case, there has been no showing that the use of the parking lot was limited to use while shopping at Roy Rogers.

Hardee's argues that Hutzler is factually distinguishable, because here there was no single parking lot for many stores, but separate parking areas, divided by a fence, for each business. Mr. Bass had to completely leave Roy Rogers to get to the gas station. Thus, defendant maintains, the "design and arrangement" of the parking lot cannot be viewed to hold it out as a parking facility for any other business in the area.

Ever assuming that parking lots were separate, however, a jury could still conclude that defendant's premises were "held out to [the] particular use" of defendant. Defendant's argument would be much stronger if Mr. Bass had made no purchase from Roy Rogers. But here, a purchase was made in Roy Rogers only minutes before the accident. There is no evidence that there were signs prohibiting parking while not shopping at Roy Rogers. A reasonable person might believe that, so long as they purchased something from Roy Rogers, they were invited to park in the lot while they completed their shopping. "The gist of [implied invitation] liability consists in the fact that the person injured did not act merely on motives of his own, to which no act or sign of the owner contributed, but that he entered the premises because he was led by the acts or conduct of the owner . . . to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the . . . place was . . . allowed to be used." *Crown Cork,* 213 Md. at p. 160, 131 A.2d 470. Whether Mr. Bass was reasonably led to believe that his use of the lot was intended by defendant is a factual question for a jury. *Id.* at p. 162, 131 A.2d 470.

## IV

For the foregoing reasons, the Court concludes that a reasonable jury could find that Mr. Bass was an "invitee" when he re-entered the Roy Rogers parking lot. Assuming the jury so found, the same reasonable jury could find that defendant breached its duty of care to plaintiff. Summary judgment is denied. A separate order will follow.

## ORDER

In accordance with the Memorandum Decision, it is this 4th day of November 1997 ORDERED:

1. That Defendant Hardee's Food Systems' motion for summary judgment BE, and the same hereby IS, DENIED.

2. That the Clerk of the Court mail copies of the Memorandum Decision and this Order to all counsel of record.